[Civ. No. 10289. Fourth Dist., Div. Two. Mar. 30, 1971.]

JIM SIKES CAHALL, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

**COUNSEL**

Courtney & Courtney and Norman P. Courtney for Plaintiff and Appellant.

Evelle J. Younger and Thomas C. Lynch, Attorneys General, and Ronald F. Russo, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**KERRIGAN, J.**—Following an administrative hearing, the Department of Motor Vehicles suspended the appellant's driver's license for a period of six months for refusal to take a chemical test in compliance with the pro-

visions of the Implied Consent Law (Veh. Code, § 13353). Appellant then sought mandamus relief in the superior court. The petition was denied and a judgment (order) entered accordingly. This appeal followed.

Inasmuch as the appellant stipulated at the time of the administrative hearing that probable cause for arrest existed and that a lawful arrest for driving under the influence of intoxicating liquor was effected, the only significant issue requiring resolution by the hearing officer and the superior court was whether the appellant had refused to submit to a chemical test. Similarly, the only issue on review is whether there is sufficient evidence to sustain the administrative finding[1] that appellant refused to comply with the statutory requirements of the Implied Consent Law.

Following the appellant's arrest for drunk driving (Veh. Code, § 23102), the arresting officer informed him that he would have to submit to a chemical test, that he had a choice as to whether the test would be of his blood, breath or urine, and that a refusal would result in suspension of his driving privilege for six months. Appellant consented to a urinalysis test. The officer told appellant that two samples of his urine would be required to constitute a complete test. Appellant was then taken to the county jail and at 8:10 p.m. gave the officer a specimen. At 8:45 p.m. he was requested to give a second sample. However, he said he was unable to furnish the second specimen because he was a diabetic and, as such, did not drink many fluids. The officer again informed him that two samples were required to complete the test, and appellant stated he might be able to give another sample later on. The officer waited until 9:30 p.m. and again requested a sample, but appellant's attempt to comply with the request proved unsuccessful. The officer admonished him that he would lose his license if he did not complete the test. Appellant replied, "We'll see about that." The officer then gave the following specific advisement: "Since you have not been able to give a second urine sample and have not fulfilled the requirements of the implied consent law in giving us a test, I am at this time going to ask you to give us either a blood test or a breath test. . . ." Appellant said he was not going to give an answer. He was then booked.

Appellant gave the following testimony at the administrative hearing: He agreed to take the urine test; he was not told he would be required to give a second sample; 30 to 40 minutes after giving the first sample, the arresting officer told him another urine specimen was required; he tried to comply but could not; the officer then told him he either had to give another urine sample or take a blood test; the officer demanded an answer; he replied he had given the officer what he requested; the officer did not mention any-

[1]Findings were waived in the superior court.

thing regarding a breath test; he did not recall being told his license would be suspended if he did not take the chemical test; he did not recall the officer reading a statement defining the provisions of the Implied Consent Law; he had no objection to taking a blood test but he thought he had complied with the officer's request by giving the urine specimen.

On appeal, the appellant claims he did not refuse to submit to a chemical test and that the officer's statement concerning the test confused him to the extent that he should be excused from the consequences of any refusal.

 While there is some conflict in the evidence, the law is clear that all conflicts must be resolved in favor of the prevailing party. (*McNeil* v. *Young,* 201 Cal.App.2d 488, 490 [20 Cal.Rptr. 34].) The function of the reviewing court is to determine whether there is any substantial evidence supporting the judgment. (*McNeil* v. *Young, supra.*) Inasmuch as findings of fact and conclusions of law were waived in the superior court, every intendment is in favor of the judgment, and it is presumed that every fact or inference essential to the support of the judgment and warranted by the evidence was found by the trial court. (*Reid* v. *Valley Restaurants, Inc.,* 48 Cal.2d 606, 609 [311 P.2d 473].)

 Appellant first contends that he did not refuse to submit to a chemical test. *Prior* to the administration of the first urinalysis, appellant was advised that he would be required to give two urine samples in order to complete the test. He gave one sample, but was unable to give another. He was explicitly told that because of his inability to complete the second test a blood or breath test would have to be taken in order to comply with the requirements of the Implied Consent Law. He refused to consent to another test.

 Section 13353 requires that one lawfully arrested for driving while intoxicated shall submit to one of the three designated types of chemical tests or suffer the prescribed penalty. While he may choose the type of test, the driver's obligation does not end when he has expressed such a choice. He must go further and *submit* to the test. "So strong is the legislative purpose *that a test be submitted to,* that the statute (Veh. Code, § 13353, subd. (a), 3d par.) [fn. omitted] permits it even though the subject driver, because of unconsciousness, or other reasons, is unable to choose the type of, or even to refuse the test. Certainly, by agreeing to one type of test, and then, voluntarily or involuntarily, failing to submit to it, a driver may not thereby deny to the state its right to any test. Such a construction would do violence to the clear purpose of the statute and to the public policy expressed thereby. 'Statutes are to be interpreted to give a reasonable result consistent with legislative purpose and not evasive thereof. [Cita-

tions.]' (*Cal. Pacific Collections, Inc.* v. *Powers,* 70 Cal.2d 135, 140 [74 Cal.Rptr. 289, 449 P.2d 225].)" (*Quesada* v. *Orr,* 14 Cal.App.3d 866, 870-871 [92 Cal.Rptr. 640].)

▪ The purpose of the Implied Consent Law is to obtain the best evidence of intoxication at the time of arrest and to provide a fair and accurate system of detection and protection of the public and to inhibit drunk driving. (*Kesler* v. *Department of Motor Vehicles,* 1 Cal.3d 74, 77 [81 Cal. Rptr. 348, 459 P.2d 900].) The statute should be interpreted in light of its purpose. (*Zidell* v. *Bright,* 264 Cal.App.2d 867, 868-870 [71 Cal.Rptr. 111].) If appellant's argument to the effect that the giving of one urine specimen was sufficient to comply with the provisions of the law, notwithstanding that two samples are required to complete the test, the purpose of the statute would be nullified. Drivers arrested for operating a vehicle while under the influence of intoxicating liquor could merely thwart the law by giving a partial balloon test, a partial blood sample or, as here, an inadequate specimen of urine. The giving of a partial urine sample obviously did not satisfy the requirements of the law. The statute contemplates that a partial test is not an entire test.[2]

▪ Upon appellant's inability to comply with the requirements of the statute by providing the second urine sample, he was obliged, upon request so to do, to select another with which he could comply. Not having done so, he refused a "request to submit to a chemical test" (see Veh. Code, § 13353, subd. (b)) and brought upon himself the penalty of the statute. (*Quesada* v. *Orr, supra,* 14 Cal.App.3d 866, 871.)

Appellant also suggests that he did not refuse a blood or breathalyzer test inasmuch as the officer did not present him with the equipment or facilities necessary to accomplish such tests. However, the officer testified that he offered to have a blood or breath test administered but the appellant stated, "I'm not even going to give you an answer." Consequently, the officer did all he could reasonably have been expected to do under the circumstances. There would have been no point in taking the appellant to a hospital or laboratory for the purpose of having a blood or breath test

---

[2]The arrest herein was effected on April 12, 1969, and the proceedings below were terminated in January 1970. The Legislature amended section 13353 of the Vehicle Code (Stats. 1970, ch. 733, p. . . . ., §§ 1 & 2, and ch. 1103, p. . . . ., § 2, effective *November 23, 1970*) to provide that an arrestee ". . . shall be told that his failure to submit to *or complete* . . . a chemical test will result in the suspension of his privilege to operate a motor vehicle . . ." and that "If the person arrested either is incapable, or states he is incapable, of completing any chosen test, he shall then have the choice of submitting to and completing any of the remaining tests or test, and he shall be advised by the officer that he has such choice . . . If any such person refuses . . . to submit to, *or fails to complete,* a chemical test, . . ." his license shall be suspended.

administered when he had already inferred that he would not take either of the alternative tests.

Appellant's reliance on *Underwood* v. *Kelly,* 5 App.Div.2d 740 [168 N.Y.2d 752], in support of his position that an individual who partially completes one test and then refuses to take additional tests has not legally refused to submit to a chemical test as required by the Implied Consent Law is not persuasive. In *Underwood,* the arresting officer testified that the arrestee consented to a blood test but the doctor was not satisfied that he had drawn enough blood and wanted to draw more; however, the officer informed the arrestee that he was not sure he had to take a second test or the amount thereof. This is not the situation here, in which the appellant was unequivocally informed after the initial specimen was given that he had not complied with the Implied Consent Law, but he nevertheless refused to take another test.

■ Finally, appellant maintains that he was so confused concerning the taking of a chemical test that his refusal should be vitiated. While there is authority that where a driver refuses to take a test because he was confused by the *Miranda* warnings as to his constitutional rights and the demand for a test under the Implied Consent Law (see *Rust* v. *Department of Motor Vehicles,* 267 Cal.App.2d 545, 547 [73 Cal.Rptr. 366]), this rule does not apply when the arresting officer explicitly informs the arrestee that the *Miranda* rights do not apply to the taking of a chemical test pursuant to the Implied Consent Law. (*Reirdon* v. *Director of Dept. of Motor Vehicles,* 266 Cal.App.2d 808, 811 [72 Cal.Rptr. 614].)

■ The question whether a driver "refused" a test within the meaning of the statute is a question of fact. (*Walker* v. *Department of Motor Vehicles,* 274 Cal.App.2d 793, 799 [79 Cal.Rptr. 433].) When there is no evidence of confusion, and where apparent confusion is not demonstrated and is not apparent to the arresting officer, no further clarification on the part of the arresting officer is required. (See *Wethern* v. *Orr,* 271 Cal.App.2d 813, 815 [76 Cal.Rptr. 807].)

The *Rust* "confusion doctrine" is inapplicable because the appellant does not maintain that he suffered any bewilderment as a result of the constitutional admonition. ■ In determining whether an arrestee's refusal is the result of confusion, the crucial factor is not the state of the arrestee's mind; it is the fair meaning to be given his response to the demand that he submit to the chemical test. (*Maxsted* v. *Department of Motor Vehicles,* 14 Cal.App.3d 982, 986 [92 Cal.Rptr. 579].) ■ Unlike *Rust, supra,* and its progeny (*Kingston* v. *Dept. of Motor Vehicles,* 271 Cal.App.2d 549, 554 [76 Cal.Rptr. 614]; *Walker* v. *Department of Motor Vehicles, supra,* 274 Cal.App.2d 793, 799, and *Lagomarsino* v. *Department of Motor Vehicles,*

276 Cal.App.2d 517 [81 Cal.Rptr. 193]), after having been warned of his *Miranda* rights and having been requested to submit to an alternative test, appellant did not request an attorney; he answered the request with "I'm not even going to give you an answer." The officer was justified in inferring that such a reply was a refusal to take another test. (See *Maxsted* v. *Department of Motor Vehicles, supra,* 14 Cal.App.3d 982, 986.) Consequently, the superior court properly determined that the appellant's refusal to submit to a chemical test was not the result of confusion.

The judgment (order denying petition for writ of mandate) is affirmed.

Tamura, Acting P. J., and Gabbert, J., concurred.