[Civ. No. 53335. Second Dist., Div. Four. Mar. 15, 1979.]

JAMES RICHARD JOYCE, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

**COUNSEL**

Evelle J. Younger, George Deukmejian, Attorneys General, Thomas S. Sayles and Thomas Scheerer, Deputy Attorneys General, for Defendant and Appellant.

Michael B. Montgomery for Plaintiff and Respondent.

**OPINION**

**KINGSLEY, Acting P. J.**—The Department of Motor Vehicles (hereinafter referred to as the department) appeals from a superior court judgment granting a writ of mandate, which writ reversed the depart-

ment's suspension of James Joyce's driver's license pursuant to Vehicle Code section 13353.[1]

[1]"(a) Any person who drives a motor vehicle upon a highway shall be deemed to have given his consent to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor. The test shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe such person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor. Such person shall be told that his failure to submit to or complete such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of six months.

"The person arrested shall have the choice of whether the test shall be of his blood, breath or urine, and he shall be advised by the officer that he has such choice. If the person arrested either is incapable, or states that he is incapable, of completing any chosen test, he shall then have the choice of submitting to and completing any of the remaining tests or test, and he shall be advised by the officer that he has such choice.

"Such person shall also be advised by the officer that he does not have the right to have an attorney present before stating whether he will submit to a test, before deciding which test to take, or during administration of the test chosen.

"Any person who is dead, unconscious, or otherwise in a condition rendering him incapable of refusal shall be deemed not to have withdrawn his consent and such tests may be administered whether or not such person is told that his failure to submit to or complete the test will result in the suspension of his privilege to operate a motor vehicle.

"(b) If any such person refuses the officer's request to submit to, or fails to complete, a chemical test, the department, upon receipt of the officer's sworn statement that he had reasonable cause to believe such person had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor and that the person had refused to submit to, or failed to complete, the test after being requested by the officer, shall suspend his privilege to operate a motor vehicle for a period of six months. No such suspension shall become effective until 10 days after the giving of written notice thereof, as provided for in subdivision (c).

"(c) The department shall immediately notify such person in writing of the action taken and upon his request in writing and within 15 days from the date of receipt of such request shall afford him an opportunity for a hearing in the same manner and under the same conditions as provided in Article 3 (commencing with Section 14100) of Chapter 3 of this division. For the purposes of this section the scope of the hearing shall cover the issues of whether the peace officer had reasonable cause to believe the person had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor, whether the person was placed under arrest, whether he refused to submit to, or failed to complete, the test after being requested by a peace officer, and whether, except for the persons described in paragraph (a) above who are incapable of refusing, he had been told that his driving privilege would be suspended if he refused to submit to, or failed to complete, the test.

"An application for a hearing made by the affected person within 10 days of receiving notice of the department's action shall operate to stay the suspension by the department for a period of 15 days during which time the department must afford a hearing. If the department fails to afford a hearing within 15 days, the suspension shall not take place until such time as the person is granted a hearing and is notified of the department's action as hereinafter provided. However, if the affected person requests that the hearing be continued to a date beyond the 15-day period, the suspension shall become effective immediately upon receipt of the department's notice that said request for continuance has been granted.

"If the department determines upon a hearing of the matter to suspend the affected

Joyce was arrested for driving under the influence of alcohol. The arresting officer (hereinafter referred to as the officer) informed Joyce of the requirements of section 13353. Joyce decided to take a breath test. The officer turned on the breathalyzer. The green light came on, indicating that the machine was ready to receive a sample. Joyce breathed into the machine; however, no reading was produced. This failure occurred because the breathalyzer malfunctioned. The officer told Joyce that two samples were needed. Joyce then breathed into the machine a second time. This time, a reading was produced. The officer then asked Joyce to breathe into the machine a third time. Joyce refused.

■ The department ordered the suspension of Joyce's driver's license on the ground that Joyce refused to submit to or failed to complete the chemical test required by section 13353. The superior court held that Joyce did submit to and complete the required test and mandated that the department reinstate Joyce's license.

The Department of Public Health has propounded regulations regarding blood alcohol analysis. In pertinent part, these regulations state: "For each person tested, breath alcohol analysis shall include analysis of 2 separate breath samples which result in determination of blood alcohol concentrations which do not differ from each other by more than 0.02 grams per 100 milliliters." (Cal. Admin. Code, tit. 17, § 1221.4, subd. (a)(1).)

This provision may be interpreted in at least three ways. First, it may be read to mean that the person undergoing breath analysis must provide 2 samples of his breath which result in acceptable measures of his blood alcohol level if analysis of the samples yields blood alcohol readings which differ from one another by no more than 0.02 grams per 100 milliliters. Second, the above stated provision may be read to mean

person's privilege to operate a motor vehicle, the suspension herein provided shall not become effective until five days after receipt by said person of the department's notification of such suspension.

"(d) Any person who is afflicted with hemophilia shall be exempt from the blood test required by this section.

"(e) Any person who is afflicted with a heart condition and is using an anticoagulant under the direction of a physician and surgeon shall be exempt from the blood test required by this section.

"(f) A person lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor may request the arresting officer to have a chemical test made of the arrested person's blood, breath or urine for the purpose of determining the alcoholic content of such person's blood, and, if so requested, the arresting officer shall have the test performed."

that the person undergoing breath analysis must provide 2 breath samples which are analyzed by the machine and that these analyzed samples result in reliable measures of blood alcohol if the blood alcohol concentration readings differ by no more than 0.02 grams per 100 milliliters. Third, the regulation may be read to require that the person undergoing the breath test keep providing samples until the analyses of two samples produce blood alcohol concentration readings which differ by no more than 0.02 grams per 100 milliliters. Joyce urges that the first interpretation is correct. The department contends that the second interpretation is correct. Indeed, the Legislature or the Department of Public Health may be well advised to clarify the meaning of this regulation. This court, however, need not provide such clarification in order to receive this appeal.

After Joyce breathed into the breathalyzer the first time, and before he breathed into it the second time, the officer told Joyce that two breath samples were required. Joyce stated at a hearing conducted by the department that on the basis of what the officer said, he (Joyce) believed that he had completed the test when he breathed into the machine the second time. The officer, moreover, stated at the hearing that he believed that when Joyce breathed into the breathalyzer the second time, Joyce believed that the test was completed. The trial court also found that Joyce believed that by breathing into the machine twice, he had done all that was required of him. Indeed, one may reasonably conclude that Joyce was confused or misled by the officer.

California courts have stated that if a driver's refusal to take a test required by section 13353 is engendered by confusing or misleading statements by the arresting officer and not engendered by the driver's self-impaired ability to understand, then the driver's refusal is vitiated so that his driver's license may not be suspended. (*Goodman* v. *Orr* (1971) 19 Cal.App.3d 845, 853 [97 Cal.Rptr. 226]; see also, *Cahall* v. *Department of Motor Vehicles* (1971) 16 Cal.App.3d 491, 497 [94 Cal.Rptr. 182].) Therefore, the superior court in the instant case did not err in mandating the reinstatement of Joyce's driver's license.

The judgment is affirmed.

Alarcon, J., concurred.

**JEFFERSON (Bernard), J.**—I dissent.

I would reverse the judgment of the superior court which set aside the action of the Department of Motor Vehicles in suspending the driver's license of James Joyce pursuant to Vehicle Code section 13353.

I disagree with the majority's interpretation of Vehicle Code section 13353 and the pertinent portion of the regulations of the Department of Public Health instituted to implement the requirements of section 13353. The pertinent portion of the regulation involved is set forth in California Administrative Code, title 17, section 1221.4, subdivision (a)(1).

In affirming the action of the superior court, the majority interprets Vehicle Code section 13353 and section 1221.4, subdivision (a)(1), of title 17 of the California Administrative Code—the administrative regulation —so as to affirm the trial court's view that Joyce, the motorist arrestee, had submitted to and completed the required test for determining the alcoholic content of his breath. I disagree. In my view, the majority's interpretations lack logic and are contrary to acceptable standards of statutory and administrative regulation interpretation.

Vehicle Code section 13353, subdivision (a), gives the individual motorist arrested a choice of whether the chemical test for determining the alcoholic content of his blood shall be a chemical test of his blood, breath or urine. The issue involved in the case before us revolves around the meaning of Vehicle Code section 13353, subdivision (b). Subdivision (b) provides, in relevant part for the issue before us, that "[i]f any such person refuses the officer's request to submit to, or fails to complete, a chemical test," the Department of Motor Vehicles shall suspend such person's privilege to operate a motor vehicle for a period of six months.

The pertinent portion of the regulation of the Department of Health which is designed to carry out the requirements of Vehicle Code section 13353 provides as follows: "(a) Procedures for breath alcohol analysis shall meet the following standards: [¶] (1) For each person tested, breath alcohol analysis shall include analysis of 2 separate breath samples which result in determinations of blood alcohol concentrations which do not differ from each other by more than 0.02 grams per 100 milliliters." (Cal. Admin. Code, tit. 17, § 1221.4, subd. (a)(1).)

The facts are not in dispute. Joyce initially refused to take either of the three tests. After refusing twice to take any test at all, Joyce told the

officer he would submit to the breath test. Joyce then blew into the machine, but the machine did not produce an analysis of his breath. At this time the officer explained to Joyce that, in order to complete a breath test, two *analyzed* samples were required. Joyce then blew into the machine a second time and the machine produced an analysis of Joyce's alcoholic breath content. The officer then requested of Joyce that he blow again into the machine in order to obtain a *second analyzed* sample. Joyce refused to blow into the machine as requested on the ground that he had provided two separate breath samples which was all that he was required to do.

The majority interprets the pertinent regulation as requiring the motorist to give two samples for breath alcohol analysis, and that the statute and regulation are then satisfied, even though *only one sample becomes analyzed.* It is of no moment to the majority that a *second* breath sample does *not* become analyzed either because of malfunctioning of the machine or some mistake or error made by the testing officer. In my view, this is a completely erroneous interpretation of title 17, section 1221.4, subdivision (a)(1), of the California Administrative Code.

The majority takes the view that section 1221.4, subdivision (a)(1), is ambiguous. I find no ambiguity in this regulation. It is abundantly clear that the regulation requires the motorist, who has agreed to a breath alcoholic analysis, to provide *several* breath samples if such are needed to produce *two* alcoholic *analyzed* samples that result in "determinations of blood alcohol concentrations which do not differ from each other by more than 0.02 grams per 100 milliliters."

I consider it apparent and obvious that the requirement for two analyzed samples that reach the same blood alcohol concentration result is clearly justified in order to produce integrity in the chemical testing process. If a motorist gives two breath samples and they analyze at different blood alcohol concentrations in excess of 0.02 grams per 100 milliliters, it is obvious that the analysis is faulty due to such factors as malfunctioning of the analysis machine or a mistake of some kind by the operator. I interpret section 1221.4, subdivision (a)(1), of title 17 of the California Administrative Code as requiring a motorist to give at least in the area of three or four samples if such are needed to produce *two analyzed samples* within the limited range provided in the regulation.

If, after giving three or four samples, there are still not two analyzed samples coming within the restricted range of results, the motorist has

then satisfied the requirements of Vehicle Code section 13353 and section 1221.4, subdivision (a)(1) of title 17 of the California Administrative Code. I do not see that there is any necessity at this time of determining what is the maximum number of breath samples a motorist could be required to give in an effort to produce two analyzed samples that fall within the limited ranges set forth in the regulation.

At any rate, I can see no justification whatever for the majority's view that, once a motorist has given two breath samples for analysis, he has satisfied his legal obligation, even though only one of the two samples is capable of chemical analysis because of a malfunction of the test machine or some mistake or error by the testing officer.

In the instant case, it is my view that the refusal of Joyce to give a third sample of his breath—after being told that the first sample was not analyzed by the machine—brings his refusal within the orbit of Vehicle Code section 13353, subdivision (b), as amounting to a *refusal* to submit to the chemical test for breath analysis and a *failure* also to complete the requested chemical test. This refusal and failure justified the Department of Motor Vehicles in suspending Joyce's license to drive.

I conclude that it is immaterial that Joyce may have honestly believed he was not required to give any more than two samples regardless of whether these samples were incapable of becoming analyzed as a result of machine malfunctioning or operator error. Such a subjective belief on the part of a motorist is an unreasonable one. A motorist cannot be permitted to make his own interpretation of the law which lacks logic or reason.

I consider that my interpretation of Vehicle Code section 13353 and section 1221.4, subdivision (a)(1), of title 17 of the California Administrative Code, the regulation which implements section 13353, comports with the principles set forth in *Kesler* v. *Department of Motor Vehicles* (1969) 1 Cal.3d 74 [81 Cal.Rptr. 348, 459 P.2d 900]. There the court observed: "A court should interpret legislation *reasonably* and should attempt to give effect to the *apparent purpose* of the statute. Our implied consent statute, including section 13353, was enacted to fulfill the need for a fair, efficient and accurate system of detection and prevention of drunken driving. [Citations.] The immediate purpose of section 13353 is to obtain the best evidence of blood alcohol content at the time of the arrest of a person reasonably believed to be driving while intoxicated. The long range

purpose is, of course, to inhibit intoxicated persons from driving on the highways. [Citation.]" (*Id.,* at p. 77.) (Italics added.)

In *Kesler,* the motorist involved had insisted upon taking all three tests of blood, breath and urine analysis. The court interpreted this insistence by the motorist to constitute a refusal to submit to a test within the meaning of Vehicle Code section 13353, subdivision (b).

In the case at bench, the majority holds that the trial court was correct in finding that Joyce's refusal to give the third breath sample was engendered by confusing or misleading statements by the arresting officer. Hence, it was not a refusal by Joyce to submit to a chemical test or a failure on his part to complete a chemical test within the meaning of Vehicle Code section 13353, subdivision (b).

The decisional law has certainly stated that " ' "[i]f the evidence shows the officer made ambiguous or conflicting statements, that evidence has a bearing on whether . . . the response of the driver indicated his confusion rather than his refusal to perform a statutory duty"; . . .' " (*Goodman* v. *Orr* (1971) 19 Cal.App.3d 845, 853 [97 Cal.Rptr. 226].) But it has also been held that "[i]n determining whether an arrestee's refusal is the result of confusion, the crucial factor is not the state of the arrestee's mind; it is the fair meaning to be given his response to the demand that he submit to the chemical test." (*Cahall* v. *Department of Motor Vehicles* (1971) 16 Cal.App.3d 491, 497 [94 Cal.Rptr. 182].)

It is well settled that "[w]hen there is no evidence of confusion, and where apparent confusion is not demonstrated and is not apparent to the arresting officer, no further clarification on the part of the arresting officer is required." (*Cahall, supra,* 16 Cal.App.3d 491, 497.) I can see no basis for the application of the "confusion doctrine" in the case at bench. The arrestee Joyce was told by the police officer in no uncertain terms that, in order to have a breath test, *two analyzed* samples were required. Joyce was told that the machine had failed to analyze the first breath sample and that is why he was required to supply a third sample in order to obtain two analyzed samples. Joyce could not possibly have been confused by the officer's statements to him. Instead of being confused, Joyce simply undertook his own interpretation of the requirements of the law, namely, that he was only required to supply two breath samples irrespective of whether one, both or none became analyzed samples.

In view of the plain language of the regulation—section 1221.4, subdivision (a)(1), of title 17 of the California Administrative Code—requiring for each person tested that a breath alcohol analysis "shall include analysis of two separate breath samples," it follows that Joyce *refused* the officer's request to submit to a chemical test and *failed* to complete the chemical test within the meaning of Vehicle Code section 13353, subdivision (b).

I would thus reverse the judgment of the trial court.

Appellant's petition for a hearing by the Supreme Court was denied May 17, 1979. Manuel, J., was of the opinion that the petition should be granted.