[Civ. No. 59482. Second Dist., Div. One. Mar. 30, 1981.]

MICHAEL D. MILES, Plaintiff and Appellant, v.
DORIS V. ALEXIS, as Director, etc., et al., Defendants and
Respondents.

COUNSEL

James R. Christiansen for Plaintiff and Appellant.

George Deukmejian, Attorney General, and John J. Crimmins, Deputy Attorney General, for Defendants and Respondents.

OPINION

SPENCER, P. J.—

INTRODUCTION

Petitioner Michael D. Miles appeals from a judgment denying his petition for a writ of mandate in which he sought to compel respondent Department of Motor Vehicles to vacate its order suspending his driving privilege for six months under Vehicle Code section 13353[1] on the ground that petitioner refused to submit to a blood alcohol test upon his arrest for driving under the influence of alcohol.

---

[1]Vehicle Code section 13353, the implied consent law, provides: "(a) Any person who drives a motor vehicle upon a highway shall be deemed to have given his consent to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor. The test shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe such person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor. Such person shall be told that his failure to submit to or complete such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of six months.

"The person arrested shall have the choice of whether the test shall be of his blood, breath or urine, and he shall be advised by the officer that he has such choice. If the person arrested either is incapable, or states that he is incapable, of completing any chosen test, he shall then have the choice of submitting to and completing any of the remaining tests or test, and he shall be advised by the officer that he has such choice.

". . . . . . . . . . . . . . . . . .

"(b) If any such person refused the officer's request to submit to, or fails to complete, a chemical test, the department, upon receipt of the officer's sworn statement that he had reasonable cause to believe such person had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor and that the person had refused to submit to, or failed to complete, the test after being requested by the officer, shall suspend his privilege to operate a motor vehicle for a period of six months. . . .

". . . . . . . . . . . . . . . . ."

STATEMENT OF FACTS

On January 10, 1978, petitioner was arrested for driving under the influence of an intoxicating beverage. (Veh. Code, § 23102, subd. (a).) The arresting officer advised him that he was required to submit to a blood alcohol analysis (Veh. Code, § 13353), and that he had a choice of a blood, breath or urine test. Petitioner elected a urine test, and the arresting officer told him that he would be required to first void his bladder and then to produce a urine sample 20 minutes later.[2]

Petitioner voided his bladder and the officer retained the voided urine. Twenty minutes later, the arresting officer told petitioner to produce the urine sample, and that if he was incapable of doing so he would have to elect another test. Petitioner was unable to produce the sample. The officer offered him a choice of blood or breath tests. Petitioner refused both.

On February 7, 1978, petitioner's driver's license was suspended due to his failure to submit to or complete a blood alcohol test upon arrest. The suspension was upheld after a Department of Motor Vehicles administrative review of the case.

CONTENTION

Petitioner contends that as a matter of law his act in providing the voiding specimen to the arresting officer constitutes valid compliance with the dictates of Vehicle Code section 13353 which requires that' upon arrest for driving under the influence a driver is required to submit to either a blood, urine or breath analysis to determine blood alcohol content.

DISCUSSION

■ Petitioner contends that he complied with the requirements of Vehicle Code section 13353 by providing a specimen of preliminarily voided urine, and, therefore, his driving privilege should not be suspended for six months as provided by the statute for failure to comply. We find no merit in this contention.

---

[2]The procedures for blood alcohol content tests are set forth in California Administrative Code, title 17, sections 1219 through 1221.5. Section 1219.2 deals particularly with urinalysis tests and states: "(a) The only approved urine sample shall be a sample collected no sooner than twenty minutes after first voiding the bladder.

". . . . . . . . . . . . . ."

Compliance with the implied consent law (Veh. Code, § 13353) consists of completing, not merely attempting, one of the three blood alcohol content tests offered. (*Skinner* v. *Sillas* (1976) 58 Cal.App.3d 591, 598 [130 Cal.Rptr. 91].) Public policy dictates that the suspected drunken driver not be allowed to evade giving the best evidence of his offense by the pretext of partial compliance. (*Cahall* v. *Dept. of Motor Vehicles* (1971) 16 Cal.App.3d 491, 496 [94 Cal.Rptr. 182].)

Since compliance consists of completing one of the tests, in the instant case it is necessary to determine what actions as a matter of law constitute completion of a urine test. The procedure for completing the test is outlined in title 17, California Administrative Code, section 1219.2.[3] An arrestee is required to void his bladder,[4] and then to give a urine sample for analysis no sooner than 20 minutes later. Thus, it is clearly necessary under this procedure to urinate twice. An administrative regulation has the force and effect of law whenever it is authorized by the express or implied terms of a statute and is reasonably necessary to effectuate the purpose of the statute. (Gov. Code, § 11342.2.)

Petitioner asserts that section 1219.2 is unauthorized by the Legislature. We disagree. The regulation was promulgated by the Department of Health Services pursuant to legislative directive. Soon after the implied consent law was passed in 1966, the "[Department] was directed by the Legislature to 'adopt and publish such rules and regulations to be used in approving and governing the operation of laboratories engaging in the performance of [blood alcohol content] tests.' (Health & Saf. Code, § 436.50)." (*Intoximeters, Inc.* v. *Younger* (1975) 53 Cal.App.3d 262, 265 [125 Cal.Rptr. 864].)

Further authority for regulations of this type may be found in Health and Safety Code section 208: The Department of Health Services is authorized to "adopt and enforce rules and regulations for the execution of its duties." As noted, those duties include approving and governing the laboratories where, as required by statute, law enforcement urinanalyses for blood alcohol content shall be performed. (Health & Saf. Code, § 436.51.) Thus, we conclude that the promulgation of a regulation governing the procedure for conducting law enforcement urine tests

---

[3]See footnote 2, *ante.*

[4]There is no requirement in the Administrative Code that the preliminarily voided urine be retained.

is both authorized and reasonably necessary to effectuate the purposes of Health and Safety Code section 436.51.

In addition, there is a rational basis underlying the regulation set forth in section 1219.2. While it may seem contrary to reason that the arrestee is required to void his bladder and then to wait at least 20 minutes before giving a sample, there is medical evidence that a sample obtained at least 20 minutes after an initial voiding may be a more reliable indicator of blood alcohol than a sample obtained without such a preliminary voiding.[5] (See Gerber, *Practical Use of Results of Biochemical Tests for Alcohol* (1961) 47 A.B.A.J. 477, 481.)

We need only note, further, that cases applying Vehicle Code section 13353 have accepted the Administrative Code urinalysis regulations as establishing the applicable legal standard. In *McConville v. Alexis* (1979) 97 Cal.App.3d 593 [159 Cal.Rptr. 49], the court dealt with a situation factually similar to the case at bar. The court utilized section 1219.2 as the proper procedure and stated: "[I]t is beyond dispute that successful completion of [the appellant's] urine test ... would have required that he urinate a second time." (*Id.*, at p. 601; see also *Cahall v. Dept. of Motor Vehicles, supra*, 16 Cal.App.3d 491.) Accordingly, we find no error in denial of the petition for a writ of mandate.

The judgment is affirmed.

Lillie, J., and Dalsimer, J.,* concurred.

---

[5]Petitioner appears to contest the rational basis for the regulation, because he elicited statements from three expert witnesses that an accurate blood alcohol content reading may be obtained from a specimen of the preliminarily voided urine. A difference of opinion in the medical community need not concern us here so long as there is a rational basis for the position adopted as a matter of law. The fact that the preliminarily voided urine may be retained, analyzed and used in evidence for whatever probative value it may have in criminal drunk driving prosecutions (as is evidently the case in Ventura County) is irrelevant to the issue of whether petitioner has complied with a duly authorized and rationally based regulation. The issue of this use of preliminarily voided specimens is not before us and we express no opinion regarding the propriety of this practice.

*Assigned by the Chairperson of the Judicial Council.