[Civ. No. 59827. Second Dist., Div. Three. Apr. 22, 1981.]

EUGENE HENRY HASIWAR, Plaintiff and Respondent, v.
HERMAN SILLAS, as Director, etc., Defendant and Appellant.

COUNSEL

George Deukmejian, Attorney General, and Scott D. Rasmussen, Deputy Attorney General, for Defendant and Appellant.

Gary T. Wienerman for Plaintiff and Respondent.

OPINION

**COBEY, J.**—Appellant, Herman Sillas, Director of the State Department of Motor Vehicles, appeals from a judgment in administrative mandamus for petitioner, Eugene Henry Hasiwar, granting him a peremptory writ of mandate commanding respondent to vacate and set aside the departmental order suspending petitioner's driver's license.

The trial court found that plaintiff (hereafter petitioner) was arrested for driving a motor vehicle under the influence of intoxicating liquor on April 6, 1977, and that he completed two tests of his breath but refused to submit to a third such test. From these findings the trial court concluded as a matter of law that petitioner voluntarily submitted to and satisfactorily completed one more test of his breath than required by Vehicle Code section 13353 and, therefore, complied fully with its provisions. The trial court further concluded as a matter of law that the departmental order suspending petitioner's driver's license was invalid since the evidence received at the departmental hearing did not support the findings of the departmental referee.

We note that the foregoing findings of fact of the trial court do not reveal whether in making them the trial court exercised its independent judgment as to the weight of the evidence at the administrative hearing or whether it merely concluded that the departmental findings contrary to its own findings were not supported by substantial evidence in light of the whole record of the administrative hearing. (See Code Civ. Proc., § 1094.5, subd. (c); *McConville* v. *Alexis* (1979) 97 Cal.App.3d 593, 599-601 [159 Cal.Rptr. 49]; *Buchanan* v. *Department of Motor Vehicles* (1979) 100 Cal.App.3d 293, 298, fn. 3 [160 Cal.Rptr. 557].) But this omission is without legal consequence on this appeal as here there is no significant factual dispute between the parties regarding what happened with respect to the administration of the chemical breath test to petitioner. The parties' dispute is solely one of law. It is whether petitioner's conduct as a matter of law constituted compliance with the appropriate subdivision of the aforementioned governing statute, the implied consent law (Veh. Code, § 13353, subd. (b)), requiring a person in petitioner's position, at the request of the arresting officer, to submit to and *complete* a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood. (See *McConville* v. *Alexis, supra*, 97 Cal.App.3d at p. 601; *Skinner* v. *Sillas* (1976) 58 Cal.App.3d 591, 598 [130 Cal.Rptr. 91].)

According to the transcript of the departmental hearing, at which petitioner was not represented by counsel, petitioner chose the breath test. The arresting officer transported petitioner to the sheriff's substation at Norwalk where there was a gas chromatograph machine or intoximeter. The officer advised petitioner that they were going to take two samples of his breath. This was done, but the first sample came back .15 and the second sample .10. Whereupon the officer advised petitioner that whenever they had two tests [*sic*] of greater than .02 difference, they were required to give him "another test for his own benefit."[1] In fact, such taking of multiple breath samples was then, and is now, expressly required by State Department of Public Health regulation until two breath samples are obtained which differ in result by no more than the just-stated tolerance. (See Cal. Admin. Code, tit. 17, § 1221.4, subd. (a)(1).)[2]

At this point petitioner stated that he did not want to blow into the machine any more. At the departmental hearing petitioner explained that he so refused because he knew that the law required that he take only one chemical test of his breath and he had already taken two such tests. He thereafter adhered to his interpretation of what the law required of him notwithstanding the fact that the arresting officer thereupon advised him that he was going to lose his driver's license for six months unless he took another breath test.

█ The testing of the breath of a person arrested for the driving of a motor vehicle under the influence of intoxicating liquor upon a highway or its equivalent for the purpose of this particular statute is not simply a game. The administrative regulation requiring the taking of at least two samples showing blood alcoholic concentrations differing by no more than 200ths percent is to insure reliability in the testing process and ultimately in the evidence of the degree of intoxication resulting therefrom that may be offered in court if necessary. (See *Kesler* v. *Department of Motor Vehicles* (1969) 1 Cal.3d 74, 77 [81 Cal.Rptr. 348, 459 P.2d 900]; *Cahall* v. *Department of Motor Vehicles* (1971) 16 Cal.App.3d 491, 496 [94 Cal.Rptr. 182].) A chemical test is not com-

---

[1]Petitioner testified at the departmental hearing that he did not recall the officer giving him this advice. He did not deny, however, that it had been given.

[2]Such regulation has read since June 12, 1976, as follows: "(a) Procedures for breath alcohol analysis shall meet the following standards:

"(1) For each person tested, breath alcohol analysis shall include analysis of 2 separate breath samples which result in determinations of blood alcohol concentrations which do not differ from each other by more than 0.02 grams per 100 milliliters."

plete until evidence of such reliability has been *reasonably* obtained. Accordingly, petitioner failed to complete the chemical test of his breath for determination of the alcoholic content of his blood. This being so, the department was required under the aforementioned Vehicle Code section 13353, subdivision (b), to suspend his driver's license for a period of six months.

Petitioner belatedly argues in this court for the first time that his refusal to complete the required chemical test of his breath was due to the arresting officer's mistake in using to him the word "test" when he meant the word "sample."[3] It is true that the officer made this mistake in terminology, but, as already noted, he nevertheless made clear to petitioner that petitioner was going to lose his driver's license for six months unless he took another breath "test." Thus, it is clear that petitioner's refusal to complete the requisite breath test was premised upon his own mistaken interpretation of what the law required of him rather than upon any mistake or confusion in the officer's advice to him at that time. In this crucial respect this case differs from the case chiefly relied on by petitioner, *Joyce* v. *Department of Motor Vehicles* (1979) 90 Cal.App.3d 539, 543 [153 Cal.Rptr. 404].

DISPOSITION

The judgment granting petitioner a peremptory writ of mandate is vacated and the trial court is directed to enter instead a judgment denying petitioner such a writ.

Klein, P. J., and Potter, J., concurred.

A petition for a rehearing was denied May 21, 1981.

---

[3]The aforementioned findings of fact and conclusions of law of the trial court in favor of petitioner do not mention any such confusion on petitioner's part. We do note, though, that the trial court in its findings and conclusions was guilty of the same confusion in terms as the arresting officer was.

Since there is no factual support in the administrative record for petitioner's tardy claim of officially induced confusion, it may be rejected on that ground alone instead of on the threshold ground that it represents a change on appeal in the theory of petitioner's case below. (See *In re Marriage of Karlin* (1972) 24 Cal.App.3d 25, 33 [101 Cal.Rptr. 240], disapproved on another point in *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].)