[Civ. No. 67862. Second Dist., Div. Four. Mar. 26, 1984.]

LOUIS PHILBERT GOBIN, Plaintiff and Appellant, v.
DORIS ALEXIS, as Director, etc., Defendant and Respondent.

642

## COUNSEL

Manuel H. Miller and Jeffrey S. Weiss for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Henry G. Ullerich and Marilyn K. Mayer, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**TROOST, J.**\*—Appellant Gobin appeals from an order and judgment denying an alternative writ of mandate seeking to vacate a Department of

---

*Assigned by the Chairperson of the Judicial Council.

Motor Vehicles suspension of his driver's license, pursuant to Vehicle Code section 13353.

### APPELLANT'S CONTENTIONS

1. Appellant, by giving three breath samples, satisfied the requirements of Vehicle Code section 13353, and section 1221.4, subdivision (a)(1), of title 17 of the California Administrative Code.

2. Appellant was not given a proper admonition when he was requested to take a second set of tests.

### STATEMENT OF FACTS

The facts of this case are essentially undisputed. On February 22, 1982, at approximately 12:45 a.m., appellant was arrested for driving under the influence of alcohol, in violation of Vehicle Code section 23152, subdivision (a). Appellant was transported to the West Valley police station. Upon arrival, he was informed of the chemical test requirements of Vehicle Code section 13353 by the arresting officer, who read the chemical test admonition to him verbatim from a printed form.[1]

Appellant chose to submit to a breath test. Having no reason to believe that the machine was not working properly, the officer set up a gas chromatograph intoximeter, following the procedure as outlined on a printed checklist. The officer then proceeded to administer the test at approximately 1:15 a.m. The first breath sample given by appellant registered .09 percent blood alcohol; the second registered .14 percent blood alcohol. Because the two samples differed by more than .02 percent blood alcohol, the officer took a third sample. The third sample registered .01 percent. This wide range in readings despite his following the checklist and the apparent satisfactory manner in which appellant provided the breath samples led the officer to conclude, based on his experience, that the machine was not functioning properly. The watch commander, notified of the disparate readings, concurred with the officer's judgment.

---

[1] That form read as follows: "You are required by state law to submit to a chemical test to determine the alcoholic content of your blood. You have the choice of a blood test, a breath test, or a urine test. If you refuse to submit to a test, or fail to complete a test, your driving privilege WILL BE SUSPENDED FOR SIX MONTHS. You do not have the right to talk with an attorney or to have an attorney present before stating whether you will submit to a test, before deciding which test to take, or during the administration of the test. If you are incapable of, or state that you are incapable of, completing the test you choose, you must submit to & complete a remaining test. Your refusal to submit to a chemical test will be commented on in a court and a jury will be instructed that your refusal may show consciousness of guilt on your part."

Stating that he believed the machine was malfunctioning, the officer then advised appellant that he could either take a breath test at the Van Nuys police station, where the machines were in proper order, or he could take a urine sample at West Valley station or a blood test. Thereupon, appellant replied: "I have already given you three tests. I am not doing any more." The officer interjected the possibility of appellant's losing his license for six months, and appellant said: "Take my license." The officer later corrected his statement, telling appellant that failure to take another test would result in loss of his driver's license.

Appellant testified that he did not tell the officer that he wouldn't go to the Van Nuys station. He admitted he was alert and aware of what was happening; that on five or six times, he told the officer it wasn't fair, having walked the line, counted fingers and blown in the machine three times.

As a result of the officer's report indicating appellant's refusal to comply with Vehicle Code section 13353, the Department of Motor Vehicles notified appellant on or about April 1, 1982, that his license was being suspended for six months. Appellant requested an administrative hearing which was held on June 3, 1982.

At the hearing, appellant stipulated that the arresting officer had reasonable cause to believe that he had been driving in violation of Vehicle Code section 23152 and that he had been lawfully arrested. These stipulations formed the first two findings of the referee.

The referee made the following additional findings: "(3) Lewis Philbert Gobin was told that his driving privilege would be suspended for a period of six months if he refused to submit to or did not complete a chemical test of the alcoholic content of his blood. (4) Lewis Philbert Gobin did not refuse to submit to or complete the test of his blood, breath, or urine after being requested to do so by a peace officer."

Notwithstanding these proposed findings, the Department of Motor Vehicles Review and Appeal Unit issued a decision and order of suspension September 2, 1982, which changed the evaluation and finding, to wit: "(4) LEWIS PHILBERT GOBIN [appellant] refused to submit to, or did not complete, any chemical test of his blood, breath, or urine after being requested to do so by the officer. *Decision*: That your driving privilege be suspended under the provisions of Section 13353 of the California Vehicle Code."

Appellant thereafter filed a petition for an alternative writ of mandamus in the superior court on September 15, 1982. A hearing was held on November 30, 1982, with evidence consisting solely of the administrative

record. On December 8, 1982, the court announced its decision denying the writ, and judgment was entered accordingly on January 14, 1983. The present appeal was filed on January 31, 1983.

## DISCUSSION

■ On appeal, the scope of our review is limited to determining whether there was substantial evidence to support the trial court's findings and judgment in denying the petition. (*McConville* v. *Alexis* (1979) 97 Cal.App.3d 593 [159 Cal.Rptr. 49].) The record indicates that the trial court properly exercised its independent judgment in finding that the administrative decision was supported by the findings, and that the findings were supported by the weight of the evidence.

By the enactment of Vehicle Code section 13353, both the People and the defendant are entitled to a *completed* chemical test, and the motorist must submit to and complete the same.[2]

---

[2]At the time the tests were administered to appellant, Vehicle Code section 13353 provided: "(a)(1) Any person who drives a motor vehicle upon a highway or upon other than a highway in areas which are open to the general public shall be deemed to have given his or her consent to a chemical test of his or her blood, breath, or urine for the purpose of determining the alcoholic content of his or her blood if lawfully arrested for any offense allegedly committed in violation of Section 23152 or 23153. The test shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe the person was driving a motor vehicle upon a highway or upon other than a highway in areas which are open to the general public in violation of Section 23152 or 23153. The person shall be told that his failure to submit to, or the noncompletion of, a chemical test will result in the suspension of the person's privilege to operate a motor vehicle for a period of six months.

"(2) The person arrested shall have the choice of whether the test shall be of his or her blood, breath, or urine, and the person shall be advised by the officer that he or she has such a choice. If the person arrested either is incapable, or states that he or she is incapable, of completing any chosen test, the person shall then have the choice of submitting to and completing any of the remaining tests or test, and the person shall be advised by the officer that the person has that choice.

" . . . . . . . . . . .

"(b) If any person refuses the officer's request to submit to, or fails to complete, a chemical test, upon receipt of the officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle upon a highway or upon other than a highway in areas which are open to the general public in violation of Section 23152 or 23153 and that the person had refused to submit to, or did not complete, the test after being requested by the officer, the department shall suspend the person's privilege to operate a motor vehicle for a period of six months. The officer's sworn statement shall be submitted on a form furnished or approved by the department. No such suspension shall become effective until 10 days after the giving of written notice thereof, as provided for in subdivision (c).

" . . . . . . . . . . . .

"(f) A person lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle in violation of Section 23152 or 23153 may request the arresting officer to have a chemical test made of the arrested person's blood, breath, or urine for the purpose of determining the alcoholic content of that person's blood, and, if so requested, the arresting officer shall have the test performed."

Section 436.52 of the Health and Safety Code provides: "The testing of breath samples by or for law enforcement agencies for purposes of determining the concentration of ethyl alcohol in the blood of persons involved in traffic accidents or in traffic violations shall be performed in accordance with regulations adopted by the State Department of Health Services.

"The rules and regulations shall establish the procedures to be used by law enforcement agencies in administering breath tests for the purposes of determining the concentration of ethyl alcohol in a person's blood. Such rules and regulations shall be adopted and published in accordance with the provisions of Chapter 4.5 (commencing with Section 11371) of Part 1 of Division 3 of Title 2 of the Government Code."

Administrative Code, title 17, section 1221.4, entitled "Standards of Procedure," states:

"(a) Procedures for breath alcohol analysis shall meet the following standards:

"(1) For each person tested, breath alcohol analysis shall include analysis of 2 separate breath samples which result in determinations of blood alcohol concentrations which do not differ from each other by more than 0.02 grams per 100 milliliters."

There are two cases that address this section of title 17.

In *Joyce* v. *Department of Motor Vehicles* (1979) 90 Cal.App.3d 539 [153 Cal.Rptr. 404], the motorist was arrested and chose a breath test. The machine was prepared and a sample given, however, no reading was produced. The officer told Joyce that two samples were needed. Joyce then breathed in the machine a second time. This time a reading was produced. The officer asked Joyce to breath in the machine a third time. Joyce refused. The Department of Motor Vehicles suspended Joyce's license on the ground Joyce refused to submit to or failed to complete the chemical test. The superior court reversed on the ground that he had done so. On appeal, the *Joyce* court stated: "This provision may be interpreted in at least three ways." (*Id.*, at p. 542.) The court saw no need to "provide such clarification in order to receive this appeal." (*Id.*, at p. 543.) It then decided for Joyce on the basis the officer had confused Joyce by not telling him the machine had malfunctioned. Justice Jefferson dissented, on the bases that section 13353 required defendants to submit and complete a test and that title 17, section 1221.4, subdivision (a)(1), requires two analyzed samples within 0.02 in order to produce integrity in the chemical testing process. He interpreted

title 17 to mean the motorist is required to give three or four samples to produce two analyzed samples within the range provided in the regulation.

In *Hasiwar* v. *Sillas* (1981) 118 Cal.App.3d 295 [173 Cal.Rptr. 358], a motorist was arrested for driving under the influence of alcohol, and chose to take the breath test. "The officer advised [the motorist] that [he was] going to take two samples of his breath. This was done, but the first sample came back .15 and the second sample .10. Whereupon the officer advised [the motorist] that whenever they had two tests [*sic*] of greater than .02 difference, they were required to give him 'another test for his own benefit.'" (*Id.*, at p. 298.) At this point, the motorist stated he did not want to blow in the machine anymore. At his hearing, the motorist explained that he refused because he knew that the law required that he take only one chemical test of his breath and he had already taken two such tests.

The *Hasiwar* court stated: "In fact, such taking of multiple breath samples was then, and now is, expressly required by State Department of Public Health regulation until two breath samples are obtained which differ in result by no more than the just-stated tolerance [.02]. (See Cal. Admin. Code, tit. 17, § 1221.4, subd. (a)(1).)" (*Id.*, at p. 298.) The court further said: "A chemical test is not complete until evidence of such reliability has been *reasonably* obtained." (*Id.*, at p. 299; italics in original.)

In the case at bar, appellant has modified his argument from asserting that the officer should have given more tests, to contending that appellant completed the chemical test in compliance with Vehicle Code section 13353 and Administrative Code, title 17, section 1221.4, subdivision (a)(1), by providing three breath samples. As authority for his proposition, he relies on the dissenting opinion in *Joyce* v. *Department of Motor Vehicles, supra,* 90 Cal.App.3d 539, and on *Hasiwar* v. *Sillas, supra,* 118 Cal.App.3d 295. We believe that appellant's contention is not supported by either authority; to the contrary, *Hasiwar* clearly indicates that appellant failed to complete the chemical test.

As indicated above, the facts are beyond dispute that the three samples provided by appellant differed by more than .02 percent. Hence, the administrative requirement that two results not differing by more than .02 percent be obtained was clearly not met.

Moreover, the trial court made an implied finding that in fact the gas chromatograph intoximeter was not working properly.[3] Common sense and

---

[3]While appellant argued at the administrative hearing and at the trial court that there was insufficient evidence to find that the machine was malfunctioning, he does not raise this issue on appeal. In light of the rule allowing facts to be presumed in favor of the prevailing party, we do not question this implied finding.

reason dictate that where, as here, a machine is malfunctioning, it cannot provide a valid analysis of the given breath samples, and any results obtained from it are clearly unreliable. Thus, in the language of *Hasiwar,* the instant breath test was not complete where there was no evidence of the machine's reliability.

There is no merit to appellant's argument that by merely blowing into the machine three times, he had completed the required test. Such an interpretation allowing a test to be deemed completed, regardless of whether the breath samples were able to be analyzed or whether the machine was functioning properly, violates the purpose of Vehicle Code section 13353 and title 17 which is to obtain the best evidence of the alcoholic content of the motorist's blood at the time of arrest and to provide a fair, efficient and accurate system of determining the motorist's blood alcohol content. (*Kesler* v. *Department of Motor Vehicles* (1969) 1 Cal.3d 74, at p. 77 [81 Cal.Rptr. 348, 459 P.2d 900].)

It is axiomatic that taking a breath test requires a machine that is operative. The officer testified the range of the results was too great and in his opinion the machine was malfunctioning. It would have been futile to continue to take further samples on that machine as it was not functioning properly.

At the time appellant gave samples of his breath, which were not analyzed by the machine, he was under arrest. When the officer correctly determined that the machine was malfunctioning, he properly informed the defendant of that fact, contrary to what the officer had done in the *Joyce* case. Thereafter, the officer informed appellant that they could obtain a valid test by proceeding to the Van Nuys station which would only take 15 to 20 minutes, or he could take a urine test at the station where they were, or a blood test.[4] Compliance with the provisions of the implied consent statute requires that the arrestee complete, not merely attempt, one of the three possible tests. (See *McConville* v. *Alexis, supra,* 97 Cal.App.3d 593.) "The testing of the breath of a person arrested for the driving of a motor vehicle under the influence of intoxicating liquor upon a highway . . . is not simply a game." (*Hasiwar* v. *Sillas, supra,* 118 Cal.App.3d 295 at p. 298.)

■ Time is of the essence when it comes to taking one of the mandated tests. (*Zidell* v. *Bright* (1968) 264 Cal.App.2d 867 [71 Cal.Rptr. 111].) However, here only 15 to 20 minutes was involved.

---

[4]As the defendant was under arrest, he could have been transported to Van Nuys. However, one of the purposes of the implied consent law is to avoid confrontations.

As appellant failed to accompany the officer to Van Nuys to complete the breath test, he was required to select and complete another test. (*Smith* v. *Cozens* (1972) 25 Cal.App.3d 300 [101 Cal.Rptr. 787]; *Cahall* v. *Department of Motor Vehicles* (1971) 16 Cal.App.3d 491 [94 Cal.Rptr. 182].) Appellant, himself, testified the officer requested five or six times that appellant submit to a further test, and that he insisted it was unfair to require him to do so. He refused to undergo any further testing. It is clear that appellant's refusal to complete the requisite breath test after being offered a workable machine was premised upon his own mistaken interpretation of what the law required of him rather than upon any mistake or confusion in the officer's advice to him at that time. (*Hasiwar* v. *Sillas, supra,* 118 Cal.App.3d 295.) Therefore, he refused the officer's request to submit to a chemical test, in violation of section 13353, subdivision (b).

Appellant's second contention that he was not given an adequate admonition as to the consequences of his refusal is based on the argument that the officer had a duty to read the "chemical test admonition" a second time upon stopping the breath test. Appellant cites no authority in support of this underlying contention. We conclude that in light of Vehicle Code section 13353 and existing case law, it lacks merit. In any event, the officer did adequately readmonish appellant.

Finally, appellant also argues that in the course of requesting that appellant submit to further testing, the officer made a misleading statement regarding the consequences of a refusal. There was some conflict in the evidence as to whether the officer advised appellant only of the *possibility* of losing his license or whether he advised him that he *would* lose his license. The law is clear that where such a conflict exists, it must be resolved in favor of the prevailing party. (*McNeil* v. *Young* (1962) 201 Cal.App.2d 488, 490 [20 Cal.Rptr. 34].) Thus, the trial court must have found that, in fact, appellant was informed that refusal to submit to a second test *would* result in suspension of his license. In addition, appellant stated to the officer: "take my license." There was substantial evidence to support a finding that appellant was adequately advised.

"In determining whether the arrestee's refusal is the result of confusion, the crucial factor is not in the state of the arrestee's mind; it is the fair meaning to be given his response to the demand that he submit to the chemical test." (*Cahall* v. *Department of Motor Vehicles, supra,* 16 Cal.App.3d 491, 497.)

"Refusals to take tests have never been excused in California on any ground other than officer-induced confusion. . . ." (*McDonnell* v. *Depart-*

*ment of Motor Vehicles* (1975) 45 Cal.App.3d 653, 659 [119 Cal.Rptr. 804].)

Here, the officer did nothing to induce confusion in appellant's mind. Appellant's refusal was based solely on his own mistaken interpretation of what the law required of him.

### DISPOSITION

The judgment is affirmed.

McClosky, Acting P. J., and Amerian, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 23, 1984.