**Stephen Toku ABE, Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. C2–85–259.

Court of Appeals of Minnesota.

Oct. 8, 1985.

Richard Newgren, Bloomington, for appellant.

Hubert H. Humphrey, III, State Atty. Gen., Joel A. Watne, Special Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Stephen Abe appeals the trial court's order sustaining the revocation of his driver's license pursuant to Minn.Stat. § 169.123 (1984). We affirm.

## FACTS

Abe was stopped while driving on Highway 100 in Golden Valley and was arrested for DWI. After being read the Implied Consent Advisory, Abe consented to submit to testing. Abe was denied an opportunity to consult with an attorney prior to testing and was told that, "If you refuse to take the test, the refusal will be offered into evidence against you at trial."

Abe was then transported from Golden Valley to the Minneapolis Police Department in downtown Minneapolis. While being transported, Abe had nothing with him except the clothes he was wearing and the interior light was left on so the officer could observe Abe.

The officer operating the intoxilyzer was a certified operator on both the Breathalyzer and Intoxilyzer 5000. During the testing procedure, an internal diagnostic check indicated the intoxilyzer was functioning properly. The machine was subject to four separate air blank tests, the results of which were within acceptable limits.

Abe's first breath sample reported an alcohol concentration of .171 with a replicate reading of .171. His second sample, taken about eight minutes later, showed an

alcohol concentration of .148 with a replicate reading of .149. The breath correlation between the readings obtained on the first and second tests was 87%.

The trial court found that the commissioner proved by a preponderance of the evidence that Abe's breath test revealed an alcohol concentration of .10 or more and, therefore, sustained the revocation of Abe's driving privileges.

## ISSUES

1. Is there a right to consult with counsel before deciding whether to submit to chemical testing?

2. Was it improper for the officer to advise Abe that a refusal to submit to chemical testing would be used against him at trial?

3. Was the evidence insufficient to show the breath tests were valid and reliable because the test correlation was below 90%?

## ANALYSIS

### I

■ In *Nyflot v. Commissioner of Public Safety*, the Minnesota Supreme Court held that a driver who was arrested for DWI has no statutory or constitutional rights to consult with an attorney before deciding whether to submit to chemical testing. *Nyflot v. Commissioner of Public Safety*, 369 N.W.2d 512, 517 (Minn. 1985).

### II

■ Prior to 1983, introduction of evidence of a refusal to submit to chemical testing violated a defendant's state and federal constitutional right not to be compelled in any criminal case to be a witness against himself. *See State v. Andrews*, 297 Minn. 260, 264, 212 N.W.2d 863, 865 (1973), *cert. denied*, 419 U.S. 881, 95 S.Ct. 146, 42 L.Ed.2d 121 (1974). In *State v. Willis*, however, the Minnesota Supreme Court held, without specifically overruling *Andrews*, that the introduction of evidence

of the absence of tests in accord with statutory authority does not violate a defendant's constitutional privilege against self-incrimination. *State v. Willis*, 332 N.W.2d 180, 184 (Minn.1983).

Subsequent to oral argument in *Willis*, the United States Supreme Court ruled that the admission into evidence of a defendant's refusal to submit to a blood-alcohol test does not violate the fifth amendment to the United States Constitution. *See South Dakota v. Neville*, 459 U.S. 553, 564, 103 S.Ct. 916, 923, 74 L.Ed.2d 748 (1983). The court held that the refusal was not compelled and, therefore, not protected by the privilege against self-incrimination. *Id.* While the Minnesota Supreme Court in *Willis* did not rely on *Neville*, three justices concurring specially argued that *Neville* overruled *Andrews*. *Willis*, 332 N.W.2d at 185–86 (Peterson, J., Amdahl, C.J., Simonett, J., concurring specially).

In response to the *Neville* decision, the legislature enacted legislation that explicitly permits the introduction of evidence of refusals at trial. Section 169.121, subdivision 2 now provides that:

Evidence of the refusal to take a test is admissable into evidence in a prosecution under this section or an ordinance in conformity with it.

Minn.Stat. § 169.121, subd. 2 (1984). The implied consent statute requires that a person be informed:

that if he refuses to take a test, the refusal will be offered into evidence against him at trial.

Minn.Stat. § 169.123, subd. 2(b)(5) (1984).

*Neville* destroys *Andrews'* precedential value. It was proper to advise Abe that a refusal to submit to chemical testing would be used against him at trial.

### III

■ Last, Abe argues the evidence was insufficient to show the intoxilyzer tests were valid and reliable because the test correlation was below 90% and was likewise insufficient to support a finding that

he was under observation for fifteen to twenty minutes prior to testing.

As to the latter, the evidence clearly showed that Abe was under observation in the backseat of the squad car for at least fifteen minutes prior to the test. There is nothing to indicate that Abe did anything during the observation period which could have affected the test results. *See Tate v. Commissioner of Public Safety,* 356 N.W.2d 766, 768 (Minn.Ct.App.1984).

As to the tests, the Bureau of Criminal Apprehension has recommended that when a correlation between tests is below 90%, the police officer should run another test. This was only a recommendation. The officer running the intoxilyzer testified, however, that it was not his practice to do so because the statute only requires two adequate samples. Abe contends that because the correlation between his tests was 87%, the evidence was insufficient to show that the intoxilyzer tests were valid and reliable.

In *Zern v. Commissioner of Public Safety,* this court held that when a certified person operates an intoxilyzer machine that is in proper working order and the chemicals are in proper condition, a correlation of 89% between the reading did not affect the accuracy and reliability of the breath test when both tests were over .10. *Zern v. Commissioner of Public Safety,* 371 N.W.2d 82, 84 (Minn.Ct.App.1985).

Here, the machine was run by a certified operator, the machine was in proper working order and the chemicals were in proper condition. The room air results were within acceptable limits. Both test samples revealed an alcohol concentration well in excess of .10. The evidence supports the trial court's finding that the commissioner proved by the preponderance of the evidence that Abe's breath test revealed an alcohol concentration of .10 or more.

## DECISION

A driver who is arrested for DWI has no statutory or constitutional right to consult with counsel before deciding whether to submit to chemical testing. It is not improper for a police officer to advise a driver that refusal to submit to chemical testing will be used against him at trial. Where an intoxilyzer machine is operated by a certified person, the machine is in proper working order, and the chemicals are in proper condition, it is not error for the trial court to conclude that the breath tests were valid and reliable when the test correlation was 87%.

Affirmed.