**Joseph W. DALEY,
Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC
SAFETY, Respondent.**

**No. C5–85–2149.**

Court of Appeals of Minnesota.

April 1, 1986.

James H. Kaster, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Joel Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered, and decided by POPOVICH, C.J., and FORSBERG and LESLIE, JJ.

### OPINION

LESLIE, Judge.

Appellant Joseph W. Daley's driving privileges were revoked pursuant to the implied consent law. He petitioned for judicial review, contending that the revoca-

tion should not be sustained because the Commissioner of Public Safety failed to show by a preponderance of the evidence that the test result was accurate and reliable. The trial court sustained the revocation, and appellant appeals from the trial court's order.

## FACTS

On March 1, 1985, Police Sergeant Rodney Walker, a certified Intoxilyzer operator, performed an Intoxilyzer test on appellant.[1] After the air blank test was performed, Walker noticed that appellant had gum in his mouth. Walker stopped the test, appellant removed the gum from his mouth, and Walker waited approximately fifteen to seventeen minutes before starting a second test.

The machine performed four air blank tests, all of which showed an alcohol content of zero, which is within acceptable limits. The calibration standard test, which measures a solution with a known sample of alcohol, was also within acceptable limits. Walker performed other checks on the machine, all of which indicated the machine was functioning properly.

Appellant provided two breath samples. The first subject test gave a reading of .196, with a replicate reading of .197; the second test gave a reading of .166, with a replicate reading of .171. The reported value was .16, and the correlation between the two tests was .86.

Walker testified that he followed the standard and acceptable operating procedures before and during the administration of the test. He observed nothing to indicate that the Intoxilyzer used to test appellant, which he had used before, was not in proper working order. He formed an opinion that the machine functioned correctly, and that the subject provided an adequate sample.

Walker testified that the breath correlation is a comparison of the two samples given by the subject. He testified that the Bureau of Criminal Apprehension (BCA) suggests that if a correlation of less than 90 percent is obtained, a second test should be offered; the BCA said that a test "should" rather than "shall" be given. His training indicated that if the test does not have a correlation of 90 percent or above, it does not mean that the test is inaccurate. He did not know how low a correlation would have to be before he would call the test invalid.

Dr. Richard E. Jensen provided expert testimony on behalf of appellant. He has had extensive experience in chemical testing, including a position as Assistant Director of the Forensic Science Laboratory at the BCA. He was involved in the breathalyzer program and in the evaluation of the Intoxilyzer 5000 and other breath testing devices for use in Minnesota, including discussions about the proper way to conduct the test with the new equipment. Jensen recommended the purchase of the Intoxilyzer 5000, and he has been trained and certified in the operation of the instrument.

Jensen explained that the Intoxilyzer test uses a duplicate analysis to identify large systematic errors. If the correlation between the two samples is less than 90%, it indicates that there is a large error, although the nature of the problem is undefined. The BCA arrived at the 90% figure because it is approximately three standard deviations from 100%. A standard deviation is a statistical measurement of the ability of a device to repeat its measurement, and anything outside of three standard deviations is assumed to be a large systematic error. Jensen testified that when the correlation is below .90, the test is invalid.

Jensen also stated that according to the Intoxilyzer Final Check-Out-Sheet, which lists measurements made when the breath

---

1. For an appeal from the criminal action arising out of the same incident, see *State v. Daley*, 384

N.W.2d 539 (Minn.Ct.App.1986).

testing device arrives at the BCA, the linearity of the machine at a concentration of .280 was not within the proper range. A linearity check is taken to ensure that the instrument will operate properly at both high and low concentrations, because the breath alcohol concentration of the person being tested is an unknown. He also testified that the machine's records indicated it was moved from its permanent location three times without linearity checks. It was his opinion that the Intoxilyzer should not have been used to test appellant because the linearity checks were not made.

Based on this testimony, the trial court sustained the revocation.

## ISSUE

Did the trial court err in sustaining the revocation of appellant's driving privileges?

## ANALYSIS

■ The proponent of a chemical test must lay sufficient foundation to establish that the test is reliable and that its administration conforms to the procedures necessary to ensure reliability. *State v. Dille*, 258 N.W.2d 565, 567 (Minn.1977). After the proponent makes a prima facie showing, the opponent may present rebuttal evidence. *Pasek v. Commissioner of Public Safety*, 383 N.W.2d 1 (Minn.Ct.App. 1986). After the rebuttal testimony is presented, the trial court must rule on the admissibility based on the entire evidence. *Noren v. Commissioner of Public Safety*, 363 N.W.2d 315, 318 (Minn.Ct.App.1985).

■ Appellant first argues that the trial court erroneously made its ruling as a matter of law. The trial court noted in a memorandum attached to its order as follows:

There was expert testimony that, where a difference in the intoxilyzer results exceed 90%, there may have been something wrong; and, that further testing by blood or urine is advisable.

Whether or not the gum, the machine, or the delay prompted the difference in the test results was not disclosed by any expert testimony.

However, the law as written required the Commissioner to issue the revocation, and the action in so doing will be sustained.

The trial court cited *Abe v. Commissioner of Public Safety*, 374 N.W.2d 788 (Minn.Ct. App.1985), for the proposition that a test correlation of 87 percent was approved. It also cited *Berge v. Commissioner of Public Safety*, 374 N.W.2d 730 (Minn.1985), for the proposition that a test result of .10 or more was approved.

In *Abe*, 374 N.W.2d at 791, this court held that because the Intoxilyzer was run by a certified operator, the machine was in proper working order, the chemicals were in proper condition, the air test results were within acceptable limits, and both test samples revealed an alcohol concentration well in excess of .10, the evidence supported the trial court's finding that Abe's breath test revealed an alcohol concentration of .10 or more. *Abe* did not compel the trial court to erroneously rule for the Commissioner as a matter of law.

Appellant argues that without a finding that the machine was in proper working order, *Abe* does not compel the trial court to sustain the license revocation. Respondent argues that implicit in the trial court's decision is a finding that the .16 alcohol concentration was sufficiently trustworthy. Although it would have been helpful for the trial court to make more explicit findings of fact, the focus of the hearing was on the issue of the reliability of the test results. We believe that implicit in the trial court's memorandum is an indication that the test was reliable and its administration conformed to the procedures necessary to ensure reliability.

Appellant also contends that it would be clearly erroneous for the trial court to find that the Intoxilyzer was in proper working order. Appellant points to Jensen's extensive testimony, which raises doubts as to the reliability of the test based on the breath correlation and linearity check. However, the trial court also heard testimo-

ny from the officer, who stated that the checks indicated the machine was functioning properly, that the test was accurate, and that BCA procedures did not compel a retest when the correlation was under 90 percent. Based on the facts and evidence, it would not be clearly erroneous to find that the Intoxilyzer was in proper working order. *See Abe*, 374 N.W.2d 788; *Zern v. Commissioner of Public Safety*, 371 N.W.2d 82 (Minn.Ct.App.1985).

Finally, appellant argues that the 90 percent correlation should be adopted by this court as a standard for the admissibility of Intoxilyzer results. This court has already determined that test results that have a correlation of below 90 percent may be reliable, and we will not adopt a rule holding otherwise in this case. *See Abe*, 374 N.W.2d 788; *Zern*, 371 N.W.2d 82.

### DECISION

The trial court did not err when it sustained the revocation of appellant's driving privileges.

Affirmed.