**STATE of Minnesota, Appellant,**

v.

**Joseph W. DALEY, Respondent.**

**No. C9–85–1912.**

Court of Appeals of Minnesota.

April 1, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Steven Z. Lange, Scott A. Teplinsky, Minneapolis, for appellant.

James H. Kaster, Minneapolis, for respondent.

Considered and decided by LESLIE, P.J., PARKER and CRIPPEN, JJ., with oral argument waived.

### OPINION

LESLIE, Judge.

The State appeals from a pretrial order ruling test results from an Intoxilyzer inadmissible at a DWI trial. We reverse.

## FACTS

Joseph Daley was charged with DWI.[1] At the omnibus hearing the testimony showed that Daley's first breath sample produced results of .196 and .197. A second sample disclosed a reading of .166 and .171. This was an 86 percent correlation. The officer administering the examination testified that the Bureau of Criminal Apprehension (BCA) advises giving another test if the correlation is below 90 percent.

Edward Engman, an Intoxilyzer instructor at the BCA with a bachelor of chemistry degree, testified for the prosecution as an expert. He stated that a correlation of 86 percent did not indicate the test was unreliable. He also testified about the "Linearity Check" on the Intoxilyzer Final Checkout sheet for the Intoxilyzer machine used in this case. These results showed a reading of .269 on a .280 test solution, or an error of .011, although the margin of error on the check-out form is .005. Engman explained that the .005 margin of error was changed to .010, but could not state when this change occurred or why the check-out sheet had the old figure.

Engman also testified about the maintenance and calibration record of the machine. The record reflected that the machine's linearity was initially tested after it had been installed at the St. Louis Park Police Department but that such checks were not performed on at least three occasions when the machine was moved to the BCA lab for repairs. Engman indicated that the machine's calibration could have been thrown off during transportation.

Dr. Richard Jensen testified for Daley. Dr. jensen was assistant director of the Forensic Laboratory at the BCA, supervising breath and alcohol testing from August 1980 to April 1984. He testified that any results below a 90 percent correlation made the test invalid.

The trial court initially suppressed the test results but reconsidered and ruled the test reliable on the next day. Nevertheless, the court, pursuant to a motion in limine by Daley, ruled that the probative value of the test was substantially outweighed by its prejudicial effect and excluded the test.

## ISSUE

Did the trial court abuse its discretion in excluding the test results of the Intoxilyzer?

## ANALYSIS

■ The trial court's determination that the test results met the foundational prerequisites for admissibility but that the probative value was substantially outweighed by its prejudicial effect under Minn.R.Evid. 403, was a discretionary evidentiary ruling. See State v. Amos, 347 N.W.2d 498, 502 (Minn.1984); State v. Helterbridle, 301 N.W.2d 545, 547 (Minn.1980). Minn.Stat. § 169.121, subd. 2 (1984) indicates that evidence of the amount of alcohol as shown by a breath test may be admitted.

■ The trial court's determination was based on four factors: (1) a low correlation (86 percent); (2) lack of linearity checks after Intoxilyzer was moved repeatedly from the police department to the BCA lab; (3) failure of the linearity test to meet the margin of error listed on the form at the final check-out; and (4) incredible nature of the testimony of the State's expert.

Having found the readings of the first and second breath sample results to be reliable, we believe it was error for the trial court to exclude the test on the ground that the probative value of the test was *substantially* outweighed by its prejudicial effect. We believe it important to distinguish between prejudicial effect as cited by the court and the highly persuasive nature of the scientific evidence which the court found to be reliable.

1. For the appeal from the implied consent proceeding arising out of the same incident, see

*Daley v. Commissioner of Public Safety,* 384 N.W.2d 536 (Minn.Ct.App.1986).

The trial court, in finding the test results reliable, apparently did recognize that this court has affirmed a trial court's determination that breath tests taken one after the other were valid and reliable when the correlation between the tests was 87 percent. *Abe v. Commissioner of Public Safety,* 374 N.W.2d 788, 791 (Minn.Ct.App.1985). And the trial court likewise recognized that this court has reversed a trial court's suppression of a test because of an 89 percent correlation, noting that both breath samples were over .10. *Zern v. Commissioner of Public Safety,* 371 N.W.2d 82, 84 (Minn. Ct.App.1985). It is worth noting that the respective tests here were substantially above .10.

Therefore, although we are reluctant to reverse a discretionary ruling, particularly where a basis is recited for doing so as was commendably done here, we find that the court abused its discretion and believe that the credibility and believeability of the witnesses and testimony should properly have been left to the jury.

## DECISION

Trial court abused its discretion in excluding the test results of the Intoxilyzer.

Reversed.