Tonieta Kay WELLS,
Petitioner, Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

No. C5–86–167.

Court of Appeals of Minnesota.

Sept. 2, 1986.

Allan H. Caplan, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Kenneth H. Bayliss, III, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Heard, considered and decided by FOLEY, P.J., and HUSPENI and CRIPPEN, JJ.

## OPINION

HUSPENI, Judge.

Respondent's driving privileges were revoked for failing a test under the implied consent law. She petitioned for judicial review, and the trial court rescinded the revocation. The Commissioner moved for a new trial, which was denied. The Commissioner appeals from the orders rescinding the revocation and denying a new trial. The respondent did not submit a brief, and this matter proceeded pursuant to Minn.R. Civ.App.P. 142.03. We reverse.

## FACTS

On August 26, 1985, Officer Jerry Johnson clocked respondent Tonieta Kay Wells driving her automobile 51 miles per hour in a posted 30 mile per hour zone. He stopped her car and observed indicia of intoxication. He administered a preliminary screening test, which she failed, and then had her perform several field sobriety tests. Johnson formed the opinion that respondent was under the influence of alcohol, and he arrested her. Johnson read the implied consent advisory to respondent at the Rice County Jail. He asked her if she would take a test. Although she initially said she would not do so until she talked to an attorney, Johnson offered respondent the test again, and she then agreed to take it.

Johnson, a certified Intoxilyzer operator, administered an Intoxilyzer test to respondent. She gave her first breath sample, inquired as to the result, and was told it was .13. Respondent then said that she did not want to blow again. Johnson informed her that if she did not blow into the instrument, he would consider it a refusal. She said fine, she could drive without a license. Johnson did not observe any problems with the first test, aside from the fact that respondent would not provide a second sample.

Respondent then decided to try again, and Johnson ran a second test. He did so to be agreeable and to give her the opportunity to give a complete test. Respondent gave two samples which the instrument accepted. In Johnson's opinion, the machine was functioning properly. Johnson noted, however, that on respondent's second sample she did not blow as hard as she did during the first one, and also that she blew, then stopped, then blew again. He made a notation of this on the test record form. The reported value of respondent's test was .11, and the correlation between the two breath samples was 89%. These proceedings were videotaped.

Johnson testified he was instructed that when the breath correlation is less than 90%, there is a possibility that it is not a good test, and that he should attempt to obtain another test. He did not do so here, however, because he felt he had wasted an "interminable" amount of time, had given respondent an opportunity to provide test samples, and did not feel there was anything wrong with any of the test samples, other than the second sample on the second test. He felt that the reason the correlation was below 90% was because that sam-

ple was not from the deepest lung air possible.

Respondent called several witnesses. The owner-manager of the restaurant where respondent had dinner and drinks prior to her arrest testified that he saw her leave the restaurant. He testified that she had no balance problems and that she did not appear to be intoxicated. Respondent testified that she had three drinks at the restaurant; she started one drink before dinner, had dinner, finished the first drink and then had two more. She did not believe she was intoxicated when she was stopped.

Thomas Burr, a chemist employed by the St. Paul Police Department and the director of the breath testing program, testified that in his opinion the Intoxilyzer was not functioning properly because the correlation was not 90% or higher. He agreed with Officer Johnson that the strength with which a person blows can have some effect on the Intoxilyzer reading. Burr stated that other problems which could cause a low breath correlation include contamination by mouth alcohol, an electrical problem, or the presence of hydrocarbons in the room. He testified that the BCA instructions provide that if the 90% correlation figure is not obtained, the standard has not been met, and the test should be rerun. He characterized test results with a less than 90% correlation as invalid, and considered that the machine was not functioning properly, the data was not usable, and no conclusions could be drawn from such a test. He offered the opinion, based on reasonable scientific certainty, that the machine in this instance was not working properly.

The trial court rescinded the revocation, finding that the results were unreliable and probably inaccurately evaluated. It noted that the BCA stated that the correlation should be 90% and determined the officer

should spend the time to obtain a test with a correlation of 90%.

The Commissioner moved for a new trial; the trial court denied his motion. Appeal was taken from the order denying the motion for a new trial and the order rescinding the revocation.[1]

## ISSUE

Was the Intoxilyzer test invalid because the correlation between the two samples was 89%?

## ANALYSIS

The trial court rescinded the revocation of respondent's driving privileges because the breath correlation was below the Bureau of Criminal Apprehension standard of 90%. It stated that it found the results unreliable and probably inaccurately evaluated.

This court has reviewed several cases in which the breath correlation has fallen below the 90% standard recommended by the BCA. See, e.g., Schwarzrock v. Commissioner of Public Safety, 388 N.W.2d 425, 426 (Minn.Ct.App.1986); Abe v. Commissioner of Public Safety, 374 N.W.2d 788, 790–91 (Minn.Ct.App.1985). In Abe, this court affirmed the trial court which had sustained a revocation based on an 87% correlation and in Schwarzrock we reversed the trial court which had rescinded a revocation based on an 86% correlation. In Abe, 374 N.W.2d at 791, this court noted that the 90% correlation figure is only a BCA recommendation. While we recognize that strict adherence to BCA recommendations is always a commendable goal and often obviates the temporal, emotional, and financial strains of an appeal, we must also recognize that those recommendations are just that, recommendations.

1. In *Montpetit v. Commissioner of Public Safety*, 392 N.W.2d 663 (Minn.Ct.App.1986), this court notes that in implied consent proceedings the Minnesota legislature has provided for a direct appeal from the trial court's order either upholding or rescinding the revocation and that further motions at the trial court level are not necessary. In the present case, therefore, we will consider the appeal as taken only from the trial court's order rescinding the revocation.

The Commissioner must make a prima facie showing of the trustworthiness of the test's administration. *State v. Dille,* 258 N.W.2d 565, 567 (Minn.1977); *Daley v. Commissioner of Public Safety,* 384 N.W.2d 536, 538 (Minn.Ct.App.1986). It is then incumbent on the challenger to show that the test was unreliable. *Dille,* 258 N.W.2d at 568.

In this case, as in the other cases in which the Intoxilyzer test was challenged based on a low correlation, the Intoxilyzer operator followed BCA procedures and testified that the machine was functioning properly. The operator offered an explanation for the low correlation: the respondent's different manner of blowing into the machine for the two samples.

Where the Intoxilyzer operator testified that the machine was functioning properly, and that the reported value was .11, a breath correlation of 89% does not in itself invalidate the test. *Schwarzrock,* 388 N.W.2d at 426. Instead, the driver must make some showing that "the perceived error results in a test showing a higher alcohol concentration than it would have but for the error." *Id.*

Burr, the expert in both *Schwarzrock* and this case, testified here that the test was invalid due to the low breath correlation and offered several possible explanations for the low correlation. However, those possible explanations are just that, possible explanations. They do not rise to the level of "facts which impugn the validity of the test." *Id.* We conclude that the trial court erred when it determined that the test was unreliable.

In view of our resolution of the test issue, we need not address other issues raised by the Commissioner.

### DECISION

The trial court's rescission of the revocation of respondent's driving privileges is reversed.

Reversed.