**Brian Walter YOUNG, Respondent,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Appellant.**

No. C7–86–2082.

Supreme Court of Minnesota.

March 18, 1988.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Samuel A. McCloud, Dean S. Grau, Alex Andrea, Minneapolis, for respondent.

AMDAHL, Chief Justice.

This case involves revocation of the respondent, Brian Walter Young's, driving privileges under the implied consent law. Minn.Stat. § 169.123 (1986). Young's privileges were revoked for 90 days when the second of two breath tests indicated alcohol concentration of .10. *See* Minn.Stat. § 169.121 (1986).

Young challenged the revocation. The referee of the district court recommended restoration of driving privileges. The district court accepted the findings of fact but not the conclusions of the referee. By Order dated November 4, 1986, the district court sustained the revocation. The court of appeals reversed by a split decision, 408 N.W.2d 212 (1987). We granted review of the court of appeals decision and affirm.

The facts of the case are straightforward. Young was stopped by a police officer and charged with driving while intoxicated. The officer read the informed consent advisory to Young, and Young knowingly agreed to submit to a breath test. The breath test was administered by the officer using the Intoxilyzer 5000 testing device. The officer was certified to oper-

ate the machine, and the machine was working properly. All other procedures were followed.

According to standard procedure, the officer obtained two breath samples from Young, and both samples were tested twice. Both samples were found to be acceptable by the machine, although the first registered in the minimum acceptable range. The readings of the first sample were .094 and .097. The second sample readings were .109 and .110. The final reported score of these two samples was .09.[1]

The correlation between the samples was 88%. The officer had been instructed by the Bureau of Criminal Apprehension (BCA) that if the correlation was less than 90%, he should request a second test. The officer requested a second test, and Young "assumed that was the procedure" and complied with the request. The second test, again involving two breath samples, was administered and the final reported value was .10 with a correlation of 99%.

The district court upheld the revocation on the basis of the second test. On appeal, the court of appeals reversed, holding that the first test complied with the statute and should have been used; therefore, there was no need to take a second test. We agree with the court of appeals and affirm.

The issue presented in this case involves construction of Minn.Stat. Section 169.123, subdivision 2(a) (1986). This statute states, in part, that "[a]ny person who drives * * * consents * * * to a chemical test of that person's blood, breath, or urine for the purpose of determining the presence of alcohol * * *." The issue is whether, under this statute, the commissioner may lawfully request a second breath test from a DWI suspect when the first test is deemed "adequate and reliable" by statute and case law, but the correlation is below the 90% recommended by the BCA guidelines.

Section 169.123, subdivision 2b(b) sets forth the criteria for breath tests and mandates when a breath sample is adequate.

It states that "[i]n the case of a test administered using an infrared breath-testing instrument, *a sample is adequate if the instrument analyzes the sample and does not indicate the sample is deficient.*" *Id.* (emphasis added). As noted, it is the machine that determines whether a breath sample is adequate or deficient and not the officer. *See Huber v. Commissioner of Public Safety*, 382 N.W.2d 573, 575 (Minn. App.1986) (the machine and not the operator determines adequacy of sample to remove officer discretion).

This court has consistently construed the implied consent and related statutes broadly. Laws prohibiting DWI are "remedial statutes. Consequently, such laws are liberally interpreted in favor of the public interest and against the private interests of the drivers involved." *State, Department of Public Safety v. Juncewski*, 308 N.W.2d 316, 319 (Minn.1981). Under this principle of liberal construction, the dissent below argued that a second test is permissible under these facts. However, even though the statute is broadly construed, the police must abide by the statute. "Compliance with the procedures of the implied consent law is a prerequisite to revocation pursuant to the implied consent law." *Tyler v. Commissioner of Public Safety*, 368 N.W.2d 275, 280 (Minn.1985). In *Tyler*, the court denied revocation where the police failed to follow the statute.

The BCA recommendations do not have the force of law. Unlike failure to follow the statute, failure to follow the recommendations does not automatically invalidate test results. For example, in *Wells v. Commissioner of Public Safety*, 392 N.W. 2d 721 (Minn.App.1986), the court of appeals held that failure to retest when the first test had an 89% correlation did not invalidate the test. The court noted that 90% correlation is "only" a recommendation. *Id.* at 723; *see Abe v. Commissioner of Public Safety*, 374 N.W.2d 788, 791 (Minn.App.1985). While adherence to the recommendations was deemed a commend-

---

1. The final reported score is determined by taking the lowest of the four readings and dropping the third digit. Thus, in the present case, the final reported value is .09. This procedure gives the defendant the benefit of the doubt.

able goal, it was not required. 392 N.W.2d at 723–24.

The court of appeals majority correctly determined that since the first breath samples were adequate, Young had satisfied his obligation to consent to a test and that the second test could not be used. The majority rejected the commissioner's contention that the low correlation justified a second test. The majority determined that since the machine worked properly on the first test, the second was unwarranted. 408 N.W.2d at 214.

The commissioner argues that the statute should be liberally construed to mean that the "officer may require the person to *complete* a test." We agree insofar as a person must complete a test pursuant to the statute. However, the commissioner then urges the court to conclude that the test is not completed until the minimum 90% correlation has been reached. However, that is not what the statute requires.

In support of this position, the commissioner extensively argues that a defendant should not be allowed to escape the consequences of providing unequal samples. However, as noted, the *machine* determines when a sample is adequate. There are apparently any number of possible reasons why a low correlation might result. *See Wells*, 392 N.W.2d at 723. The record discloses that the testing police officer believed that Young's first breath sample was deficient. However, the machine determined otherwise. Officer discretion is not a part of the testing process.

The commissioner further relies on *Hasiwar v. Sillas*, 118 Cal.App.3d 295, 173 Cal. Rptr. 358 (1981), for his proposition that proper correlation should be viewed as part of a completed test. In *Hasiwar*, proper correlation is written into the statute and is mandated. Consequently, a breath test was held not to be complete until the proper correlation level was reached. The relevant statute required taking samples until two of them reached the proper correlation level. The court noted that proper correlation is required by statute "to insure reliability in the testing process and ultimately in the evidence of the degree of intoxi-

cation resulting therefrom that may be offered in court if necessary." *Id.* at 298, 173 Cal.Rptr. at 360; *accord Gobin v. Alexis*, 153 Cal.App.3d 641, 200 Cal.Rptr. 397 (1984) (emphasizes that proper correlation is a statutory requirement).

In Minnesota, correlation is only a recommendation. While it is a commendable goal, it does not have the force of law. If high correlation is desired, then it should be made a requirement in the statute. We hold that, under the present facts, a driver need not submit to a second test when the first test is reliable and adequate.

Affirmed.

POPOVICH, J., took no part in the consideration or decision of this case.