**STATE of Minnesota, Respondent,**

v.

**Vincent Paul COLEMAN, Appellant.**

No. A03–1827.

Court of Appeals of Minnesota.

Sept. 14, 2004.

Mike Hatch, Attorney General, St. Paul, MN; and David K. Ross, Carson, Clelland & Schreder, Minneapolis, MN, for respondent.

Samuel A. McCloud, Carson J. Heefner, Shakopee, MN, for appellant.

Considered and decided by WILLIS, Presiding Judge; MINGE, Judge; and FORSBERG, Judge.*

## OPINION

MINGE, Judge.

Appellant argues that the district court erred in denying his motion to suppress the results of his blood test. He argues that once a police officer begins to administer a breath test, the officer does not have the discretion to terminate the test if

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

the individual burps during the exam unless the machine reveals the presence of mouth alcohol. We affirm.

## FACTS

After initiating a traffic stop, Officer John Keding arrested appellant Vince Coleman based on his belief that appellant was driving under the influence of alcohol. Officer Keding transported appellant to the police station, where he read appellant the Minnesota Implied Consent Advisory. Appellant stated that he understood his rights and agreed to submit to a breath test.

After the initial 15–minute observation period recommended by the Bureau of Criminal Apprehension (BCA), Officer Keding administered the breath test using the Intoxilyzer 5000. Appellant's first breath sample showed a score of .151. Before giving the required second sample, appellant burped. Officer Keding stopped the test due to concerns that appellant's burp created mouth alcohol, which could affect the reliability of the test. He then began a second 15–minute observation period, intending to run the test from the beginning. During this second observation period, appellant burped again. Officer Keding terminated the observation period, reread appellant the Minnesota Implied Consent Advisory, and asked appellant to submit to a blood or urine test. Appellant agreed to a blood test, which indicated an alcohol level of .14.

Based on the results of the blood test, appellant was charged with fourth-degree driving while impaired. The district court denied appellant's motion to suppress the blood test, found him guilty as charged and sentenced him. Appellant challenges the district court's denial of his motion to suppress the results of his blood test, arguing that the officer improperly discontinued the breath test.

## ISSUE

If a person burps during the administration of a breath test to determine blood-alcohol concentration, does the administering police officer have discretion to terminate the test and provide an alternative test?

## ANALYSIS

 A district court's determination of whether to suppress evidence is reviewed de novo. *State v. Othoudt,* 482 N.W.2d 218, 221 (Minn.1992). When the facts are not in dispute, we consider whether suppression of the evidence is warranted as a matter of law. *Id.* Any person who drives a motor vehicle in the state of Minnesota consents to a chemical test of his or her blood, breath, or urine for the purposes of determining the presence of alcohol. Minn.Stat. § 169A.51, subd. 1(a) (2002). It is the state's burden to establish that the administration of the test conforms to the procedure necessary to ensure reliability; the opponent must then suggest reasons why the test was untrustworthy. *See Tate v. Comm'r of Pub. Safety,* 356 N.W.2d 766, 767–68 (Minn.App.1984).

 When a breath test is administered using an infrared breath-testing instrument, such as the Intoxilyzer 5000, the test must include two adequate breath samples. Minn.Stat. § 169A.51, subd. 5(a) (Supp.2003). Such a sample is "adequate if the instrument analyzes the sample and does not indicate the sample is deficient." *Id.,* subd. 5(b). "[I]t is the machine that determines whether a breath sample is adequate or deficient and not the officer." *Young v. Comm'r of Pub. Safety,* 420 N.W.2d 585, 586 (Minn.1988). "Officer discretion is not part of the testing process." *Id.* at 587.

Appellant argues that because it is the machine itself, and not the officer, that determines the adequacy of the breath sample and because the machine here did not indicate an inadequate sample, Officer Keding improperly discontinued the Intoxilyzer 5000 test before taking the required second sample. Respondent argues that police officers have limited discretion in these situations to discontinue the test.

The BCA recommends that police officers follow certain procedures when conducting these types of tests. It recommends that an officer conduct a 15– to 20– minute observation period prior to administering an Intoxilyzer test to ensure that drivers have not placed anything in their mouth, burped or vomited. Such events can produce mouth alcohol, which can affect the reliability of the test. The BCA encourages the officer to restart the test if a subject burps after providing the first sample but prior to providing the second sample. Appellant correctly notes that this BCA recommendation does not have the force of law. *Id.* at 586. Appellant argues that because the Intoxilyzer machine has a built-in mouth-alcohol detector and because two breath samples are taken, police officers should not be allowed to terminate the test based on their concerns regarding the presence of mouth alcohol unless the machine actually indicates its presence. Basically, appellant argues for a "bright-line rule" that would preclude any officer discretion in the testing process.

█ We do not agree. While BCA recommendations do not have the force of law, officers are urged to follow them. *Johnson v. Comm'r of Pub. Safety,* 392 N.W.2d 359, 362 (Minn.App.1986). At appellant's hearing, a trained scientist for the BCA testified that burping could cause mouth alcohol, which can affect a suspect's test. She further informed the district

court that even when mouth alcohol is present, the Intoxilyzer 5000 does not always detect it and that the observation period is an additional safeguard in minimizing any effect of mouth alcohol. The BCA's recommendation recognizes these risks and flaws inherent in detecting the presence of mouth alcohol and is designed to heighten the reliability of the tests.

Appellant urges that we consider two court decisions that emphasize the limits on officer discretion. The police officers in *Genia v. Comm'r of Pub. Safety,* 382 N.W.2d 284 (Minn.App.1986), and *Overby v. Comm'r of Pub. Safety,* 386 N.W.2d 1 (Minn.App.1986), attempted to use discretion in determining that the subjects failed to consent to a test when they did not provide an adequate sample within the allotted time. In both cases, the courts found that because the machine allows a subject four minutes to provide a certain breath volume, an officer should allow the full time to meet the machine's requirements. In the present case, Officer Keding did not conclude that appellant failed to consent. *Genia,* 382 N.W.2d at 286; *Overby,* 386 N.W.2d at 1. He merely changed the test being performed. Therefore, these cases do not control our decision.

Appellant was not entitled to a particular type of test from the outset. Minn. Stat. § 169A.51, subd. 3 (2002), specifically states that the officer can direct which test is used. The only statutory requirement is that "[a]ction may be taken against a person who refuses to take a blood test only if an alternative test was offered and action may be taken against a person who refuses to take a urine test only if an alternative test was offered." *Id.* The Minnesota Supreme Court has determined that a driver who initially consents to a breath test is obligated to take an alternative test if the Intoxilyzer is inoperative. *Gunderson v.*

*Comm'r of Pub. Safety*, 351 N.W.2d 6, 7 (Minn.1984). Therefore, we determine that appellant could be given a second type of test when concerns existed with the first type.

Appellant agrees that he was not entitled to a particular test, but argues that once an officer chooses a particular type of test, he does not have the authority to change in the middle of the test, unless the machine indicates that the test was invalid. Appellant does not cite to any persuasive legal authority to support this proposition. We note that in the revocation setting, the Minnesota Supreme Court has stated that DWI laws are remedial statutes, and that they "are liberally interpreted in favor of the public interest and against the private interests of the drivers involved." *Young*, 420 N.W.2d at 586. A parallel rule of reasonableness should apply in the situation presented by this case.

There is no evidence that the police officer here abused his discretion. In fact, appellant's initial breath test indicated an amount of alcohol in excess of the legal limit. In terminating the breath test and administering a blood test, appellant may have had a more favorable testing outcome. This is not a case where an officer, dissatisfied with an individual who passes one test, changes the type of test in an attempt to fail the individual.

We conclude that in accordance with the BCA recommendations, police officers have discretion to terminate a breath test due to concerns with mouth alcohol if they provide the individual with an alternative test.

## DECISION

Because the police officer followed BCA recommendations when appellant burped, the police officer had the discretion to terminate the breath test and provide appellant with a different type of test, even though the machine did not reveal the presence of mouth alcohol.

**Affirmed.**