Richard Paul LeCLAIR,
Petitioner, Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

No. C5–87–1068.

Court of Appeals of Minnesota.

Dec. 8, 1987.

James H. Leviton, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Heard, considered and decided by HUSPENI, P.J., and SEDGWICK and LOMMEN *, JJ.

## OPINION

A. PAUL LOMMEN, Judge.

Respondent's driving privileges were revoked pursuant to the implied consent law for refusing testing when the officer believed respondent failed to give an adequate urine sample and refused a blood test. When the sample proved sufficient and revealed an alcohol concentration of .15, the Commissioner issued an amend-

---

* Acting as judge of the Court of Appeals by ap-    pointment pursuant to Minn. Const. art. 6, § 2.

ed notice showing a revocation for failing the test. Respondent petitioned for judicial review and the trial court rescinded the revocation. The Commissioner appeals.

## FACTS

On February 18, 1987, at approximately 12:50 a.m., Trooper Alan Freng was dispatched to an accident with injuries on northbound Interstate 35W on the Mississippi River Bridge in Minneapolis. At the scene, the trooper found a damaged 1977 Chevrolet blocking the left center lane. Two people were standing by the car; Margo Vogel, a passenger in the vehicle, and respondent Richard LeClair, who said he had been driving.

Freng observed LeClair's eyes were watery, his speech was slurred, and he had an odor of alcohol about him. LeClair admitted he had been drinking. LeClair, who suffered injuries on his legs and mouth, was transported by ambulance to Fairview–St. Mary's Hospital. Freng, who believed respondent had been driving while under the influence, followed LeClair to the hospital, briefly spoke with him in the emergency room, and then invoked the provisions of the implied consent law.

Freng offered respondent the choice of a blood or urine test. Respondent first said he would take a blood test, but then changed his mind and agreed instead to give a urine sample. Freng obtained a urine specimen bottle, and respondent urinated into it. The specimen did not cover the bottom of the bottle, which is perhaps 1½ inches wide. The instructions stated the bottle should be full, and Freng's classroom instruction indicated it should be half full. Freng concluded it was an insufficient sample. When respondent said he was not physically able to provide any more urine, Freng said he would wait. Approximately 45 minutes later, Freng asked him to urinate again. He complied and added a small amount to the sample. Freng again concluded it was not a sufficient sample and told respondent to urinate more. Respondent said he could not do so. Freng offered him a blood test but he refused.

Freng then served a notice of revocation and revocation on respondent. He circled and checked the box on the form indicating respondent refused testing and his driver's license was revoked for one year. Freng also sent the urine sample to the Bureau of Criminal Apprehension to determine whether an analysis could be performed despite the small amount. The BCA was able to perform the analysis, which indicated an alcohol concentration of .15. When Freng received the BCA report, he resubmitted the matter to the Commissioner so that the original notice and order of revocation could be amended.

Respondent petitioned for judicial review on March 5, 1986, contending, in relevant part, he did not refuse testing, the chemical test did not accurately or reliably indicate an alcohol concentration of .10 or more, and his refusal was reasonable.

The BCA analyzed the specimen on February 24, 1987. On March 6, 1987 an amended notice and order of revocation, amending the revocation from one for refusal to one for operating a motor vehicle with an alcohol concentration of .10 or more, and also canceling the license as inimical to public safety, was issued. On March 19, 1987 counsel for the Commissioner of Public Safety sent respondent's attorney a letter advising him of these facts. The implied consent hearing was held on March 30, 1987.

The trial court found the amended notice and order of revocation did not advise respondent of his right to obtain administrative and judicial review as required by Minn.Stat. § 169.123, subd. 5 (1986). The trial court concluded as a matter of law the revocation for refusal was a judicial admission which the Commissioner could not amend or withdraw. It ordered the revocation be rescinded. The Commissioner of Public Safety appeals.

## ISSUES

1. Did the Commissioner of Public Safety properly amend the revocation under Minn.Stat. § 169.123 (1986) to reflect respondent failed rather than refused the test?

2. Did respondent receive sufficient notice of his right to seek review of the amended revocation?

## ANALYSIS

1. The trial court concluded the notice and order of revocation could not be withdrawn or amended to conform to later discovered evidence. The court determined the notice and order of revocation was a judicial admission, and, as such, was a binding acknowledgment of fact which the Commissioner could not displace because of contrary proof. Relying upon *Godderz v. Commissioner of Public Safety,* 369 N.W. 2d 606 (Minn.Ct.App.1985), it rescinded the revocation.

■ The *Godderz* court, however, disapproved amending the notice and revocation by motion at the time of the hearing. In this case, the Commissioner properly amended the revocation by sending respondent an amended notice and the order of revocation. *Id.* at 608.

■ Further, the trial court's characterization of the notice and order of revocation as a judicial admission is misplaced. A judicial admission has been defined as "a formal act, done in the course of judicial proceedings, which waives or dispenses with the production of evidence, by conceding for purposes of litigation that the proposition of fact alleged by the opponent is true." *Hofer v. Bituminous Casualty Corp.,* 260 Iowa 81, 148 N.W.2d 485, 486 (1967); Black's Law Dictionary 44–45 (5th ed. 1979). A notice and order of revocation does not fall within that definition.

Respondent argues that approving this procedure will allow the Commissioner to issue a revocation of one year for refusal to anyone who is stopped. He contends the sample should have been sent to the BCA before the revocation for refusal was issued.

Minn.Stat. § 169.123, subd. 5a specifically provides that a peace officer, on behalf of the Commissioner, shall serve immediate notice of intention to revoke and of revocation on a person who refuses to permit a test. Respondent here failed to provide a sufficient urine sample to test, according to the officer's training, and he refused a blood test. The officer, on the facts before him, properly issued a revocation for refusal.

■ 2. The next issue concerns the sufficiency of the notice. The trial court found the amended notice of revocation and revocation did not advise respondent of his right to obtain judicial and administrative review as required by Minn.Stat. § 169.123, subd. 5. The Commissioner does not challenge this finding of fact, although he argues the record is merely silent on this point. While he provides an explanation as to how such notice is routinely given, such facts are not in the record and will not be considered an appeal. *Plowman v. Copeland, Buhl & Co., Ltd.,* 261 N.W.2d 581, 583 (Minn.1977). The Commissioner also argues this issue is not within the scope of judicial review. The supreme court has considered the issue of sufficiency of notice under the implied consent law, and we will also consider the issue. *McIntee v. State, Department of Public Safety,* 279 N.W.2d 817 (Minn.1979).

In *McIntee,* the statute provided for notice of revocation by certified or registered mail. The post office delivered a notice to the driver stating he had certified mail, but the driver never picked up the certified mail containing the notice. He argued he never "received" the notice. The supreme court held the driver received adequate notice, noting the case did not involve an undelivered notice, but instead disclosed constructive delivery, and refusal or neglect by the driver to pick up the properly delivered notice. *Id.* at 819–20.

■ Respondent in this case received notice of his right to obtain review in the initial revocation notice which he received. He petitioned for review and argued as one of his grounds for rescission the validity and accuracy of the test. He was notified of the amended basis for the revocation, both in a notice from the Commissioner and in a letter from counsel for the Commissioner before the hearing. He did not request a continuance for the implied consent hearing, nor did he argue he was preju-

diced by having to address the test failure rather than the test refusal. Evidence as to the test was presented by the Commissioner. Under these circumstances, there was no prejudice to respondent by the failure to provide notice of the right to review with the notice of the amended revocation. *Sabes v. City of Minneapolis,* 265 Minn. 166, 169–70, 120 N.W.2d 871, 874 (1963) (no material prejudice by insufficiency of notice when attorney for party had actual notice of bases for city council's proposal to revoke licenses necessary to operate bar and the opportunity to be heard). Respondent therefore received adequate notice of his right to seek review of the revocation.

### DECISION

The order of the trial court rescinding the revocation is reversed.

Reversed.