**STATE of Minnesota, Respondent,**

v.

**Robert William STERLING, Appellant.**

No. A09–418.

Court of Appeals of Minnesota.

May 18, 2010.

Lori Swanson, Attorney General, St. Paul, MN, and LaMar Piper, Watonwan County Attorney, Kevin C. Lin, Assistant County Attorney, St. James, MN, for respondent.

Allen P. Eskens, Eskens Gibson and Behm Law Firm, Mankato, MN, for appellant.

Considered and decided by ROSS, Presiding Judge; STONEBURNER, Judge; and HARTEN, Judge.

## OPINION

HARTEN, Judge.*

After being charged with two counts of fourth-degree driving while impaired (DWI), appellant moved to dismiss the charges on the ground that the deputy sheriff unlawfully requested him to give a urine sample after he had provided breath samples for an Intoxilyzer test. His motion was denied. Under the procedure set out in Minn. R.Crim. P. 26.01, subd. 4, appellant acknowledged that the denial of his motion was dispositive, maintained his not guilty plea, and waived his right to a jury trial. The district court found him guilty on stipulated facts. He challenges his conviction.[1]

## FACTS

On 22 May 2008, appellant Robert Sterling was stopped by a Watonwan county

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. The time for his appeal was stayed pending supreme court review of *Morris v. State*, No. A06–2101, 2008 WL 126645 (Minn.App.15 Jan.2008) (dispositive of appellant's right to counsel). On 14 May 2009, *Morris v. State*, 765 N.W.2d 78 (Minn.2009), established appellant's right to counsel.. An order of this court dissolved the stay and the appeal proceeded.

deputy sheriff who observed appellant's vehicle swerve over the center line. Appellant failed the field sobriety tests that the deputy administered and admitted drinking two beers about a half an hour earlier. The deputy arrested appellant for DWI, took him to the county jail, and read him the implied consent advisory.

The deputy, a certified operator of the Intoxilyzer 5000, followed correct procedure in using the machine, and appellant submitted two adequate breath samples, which the machine accepted and measured. But the Intoxilyzer failed to complete the procedure: it stopped on "Air Blank" and did not provide a printout of appellant's alcohol concentration level to the deputy.

The deputy then read the implied consent advisory to appellant again and asked appellant to provide a urine sample, which appellant did. It showed a .15 alcohol concentration. The next day, the Bureau of Criminal Apprehension (BCA) provided a printout of the Intoxilyzer test; it also showed a .15 alcohol concentration. The BCA confirmed that the machine had accurately evaluated appellant's breath sample.

Based on the results of the urine test, respondent State of Minnesota charged appellant with two counts of fourth-degree DWI.

## ISSUES [2]

1. Did the officer lawfully request a urine sample from appellant?

2. Did the district court err in using the results of the urine test to convict appellant?

2. Appellant also raises the issue of whether he was deprived of due process because he was not given the source code for the Intoxilyzer 5000 EN. The state asserts, and we agree, that

## ANALYSIS

In an appeal following a Minn. R.Crim. P. 26.01, subd. 4, procedure (superseding the procedure set out in *State v. Lothenbach,* 296 N.W.2d 854, 857–58 (Minn.1980)), this court's review is limited to the pretrial order that denied the motion to suppress. *State v. Ortega,* 770 N.W.2d 145, 147 n. 1, 149 (Minn.2009). This court reviews undisputed facts and "determine[s], as a matter of law, whether the evidence need be suppressed." *Id.* at 149 (quotation omitted).

### 1. Alternative Urine Sample

"[A] driver who submits to a breath test is obligated to submit to a blood or urine test if the breath testing machine does not work ... if he does not want to lose his license." *Gunderson v. Comm'r of Pub. Safety,* 351 N.W.2d 6, 7 (Minn.1984). Appellant argues that the district court erred in relying on *Gunderson* because, in that case, "the testing machine malfunctioned by not giving a reading on the breath sample ... [and the] machine was taken in for repairs" while the machine in the instant case "was working properly at the time it was used and it provided a print out of the breath results." Appellant cites the parties' Minn. R.Crim. P. 26.01, subd. 4, stipulation at 6(k) for support of this statement. But appellant misreads 6(k) and takes it out of context. The relevant portion of the stipulation reads:

Defendant stipulates to the following facts:

. . . .

f. [Appellant] submitted two adequate breath samples and the Intoxilyzer

appellant has no standing to raise this issue because the state's charges were based solely on appellant's urine test.

machine accepted the breath samples.

g. After [appellant] provided the breath samples, the Intoxilyzer machine display stopped on "Air Blank" and failed to complete the testing procedure or provide a printout with [appellant's] alcohol concentration level.

h. [The deputy] read [appellant] the Implied Consent Advisory again and asked [appellant] to submit to a urine test. [Appellant] agreed and provided a urine sample.

i. The urine sample results showed a .15 alcohol concentration level.

j. Both the breath test and the urine test were conducted within two hours of [appellant] driving or operating a motor vehicle.

k. The day after, on May 23, 2008, the BCA provided a printout of the Intoxilyzer result showing a .15 alcohol concentration level. The BCA also confirmed the machine was working properly [i.e., accurately evaluating breath samples] at the time [that appellant provided breath samples].

After taking appellant to the county jail, the deputy's immediate responsibility was to ascertain appellant's alcohol concentration. The deputy's attempt to do so with the Intoxilyzer failed because the machine did not provide that information, and the deputy had no way of knowing when, if ever, the Intoxilyzer would provide him with an evaluation of appellant's breath samples. As it happened, the Intoxilyzer did provide the evaluation on the following day, but that fact is irrelevant; under the circumstances, the deputy could not wait until the next day to determine what appellant's alcohol concentration had been while he was driving.

Appellant relies on *Young v. Comm'r of Pub. Safety,* 420 N.W.2d 585, 587 (Minn. 1988) (holding that "under the present facts, a driver need not submit to a second test when the first test is reliable and adequate"). But appellant's reliance is misplaced: the holding in *Young* is explicitly limited to its facts, and those facts are clearly distinguishable. *See also Nelson v. Commissioner of Public Safety,* 779 N.W.2d 571, 574–77 (Minn.App.2010) (distinguishing *Young* and following *Gunderson* to affirm sustaining of revocation of driver's license when driver's first blood sample had been drawn using an expired blood-test kit, officer had second blood sample, and test result of second sample was basis for revocation of driver's license).

In *Young,* the driver provided two breath samples, each of which was tested twice. *Id.* at 586. The first sample provided readings of .094 and .097; the second provided readings of .109 and .110. *Id.* The final reported score (obtained by dropping the third digit from the lowest of the four readings) was .09. *Id.; id* at n.1. The correlation between the samples was 88%, and the BCA had instructed the deputy to request a second test if the correlation was less than 90%. *Id.* He did so. *Id.* In the second test, the reported value was .10 and the correlation of the samples was 99%. *Id.* In the instant case, the deputy sheriff never obtained any Intoxilyzer score on appellant's samples. Appellant's Intoxilyzer test, unlike the first test in *Young,* was not "reliable and adequate."

Appellant also argues that the deputy had no authority to make "the unilateral determination that [a]ppellant's breath samples were inadequate," relying on language in *Young:* "[I]t is the machine that determines whether a breath sample is adequate or deficient and not the officer." *Id.* at 586. But neither the deputy nor anyone else claimed that appellant's breath samples were inadequate; the deputy de-

termined that the machine malfunctioned by failing to disclose appellant's alcohol concentration, because appellant's breath samples were inadequate.

A driver submits to a chemical test of blood, breath, or urine "for the purpose of determining the presence of alcohol." Minn.Stat. § 169A.51, subd. 1(a) (2008). The deputy lawfully requested appellant to provide a urine sample when the Intoxilyzer test did not achieve that purpose.

### 2. Use of Urine Test Result

 Appellant also argues that, once it was known that the Intoxilyzer test was adequate, the urine test should have "be[en] deemed to be a contingent test that should [have been] thrown out." For this argument, he relies on *LeClair v. Comm'r of Pub. Safety,* 416 N.W.2d 209 (Minn.App.1987). Again, his reliance is misplaced: *LeClair* is distinguishable. In that case, a license was revoked for refusal to test because the arresting officer believed the urine sample to be inadequate. *Id.* at 210. The sample was nevertheless submitted and tested, revealing an alcohol concentration of .15. *Id.* at 210. The order of revocation was amended to show that the license was revoked for operating a motor vehicle with an alcohol concentration of .10 or more, not for refusal to test. *Id.* The district court rescinded the amend-ed revocation, indicating the revocation could not be amended to conform to later-discovered evidence. *Id.* at 211. This court reversed the rescission, concluding that both the issuance of the revocation for refusal to test and the amendment of the order of revocation were proper. *Id.* at 211–12.

*LeClair* involved only one test; therefore, it is not relevant to the use of results from a second test. Appellant provides no other support for his view that, when two tests are administered, the results of the second are inadmissible if the first is later determined to have been valid.

### DECISION

If an Intoxilyzer unexpectedly malfunctions by failing to display a driver's alcohol concentration, the attending officer may request a sample for an alternative blood or urine test, the results of which are admissible. The district court did not err in admitting the results of appellant's urine test. We affirm his conviction.

**Affirmed.**