**STATE of Minnesota, Respondent,**

v.

**Blake Joseph DOTSON, Appellant.**

**A16-1338**

Court of Appeals of Minnesota.

Filed July 17, 2017

Lori Swanson, Attorney General, St. Paul, Minnesota; and Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jodi Lynn Proulx, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Jesson, Judge; and Smith, John, Judge.*

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

## OPINION

SMITH, JOHN, Judge

Appellant challenges his conviction of fifth-degree possession of a controlled substance in violation of Minn. Stat. § 152.025, subd. 2(a)(1) (2014), arguing that the conviction must be reversed because police entered the apartment where he was staying without lawful justification, detained him without reasonable suspicion of criminal activity, and arrested him without probable cause. Because we conclude that Minn. Stat. § 504B.211 does not give a landlord or property manager rights of use to a leased property, police did not obtain valid consent to enter the apartment, and no exception to the warrant requirement applies, we reverse.

## FACTS

Testimony from two evidentiary hearings establishes that on June 9, 2015, J.C., property manager of Spruce Place apartments and J.B., maintenance technician, noticed a water leak in the maintenance shop of the apartment building. They believed the water leak to be coming from apartment 2, so they went to the apartment and J.C. knocked on the door. An unknown male opened the door, invited J.C. and J.B. into the apartment, and stated that he believed the leak was coming from the bathroom.

While inside the apartment, J.C. observed people in the bedroom, one of whom had a needle up to his arm. J.C. also observed used needles, a pipe, and a "marijuana machine-type thing" later identified as a marijuana grinder. J.C. then "went and got" J.B., who was looking at the bathroom sink. They left the apartment,

stating they would be back later to fix the leak.

After leaving the apartment, J.C. called the police and spoke with Sergeant Poidinger. J.C. asked if police could remove the people and the narcotics from the apartment. Sergeant Poidinger stated he could not evict the people, but police would "certainly take the narcotics investigation."

When police arrived at the apartment complex, J.C. and J.B. "re-entered the apartment to see if anyone was still there." J.C. relied on a clause in the lease agreement that allowed management to enter the apartment for purposes of maintenance. After finding the apartment empty, J.C. told police officers that they could enter the apartment. Sergeant Poidinger entered the apartment, saw the drug paraphernalia, called another officer to apply for a search warrant, and froze the scene from inside the unit until a judge signed the warrant.[1] "Freezing the scene" means guarding a potential crime scene to avoid evidence tampering. Police froze the scene from inside the apartment because officers "were already in the apartment," there were only three officers present, and the apartment had three points of entry. No search occurred while the officers froze the scene.

While the officers were inside the apartment, appellant Blake Joseph Dotson, an overnight guest staying at the apartment, used the security buzzer to be let into the apartment. One of the officers buzzed Dotson into the building and, after Dotson knocked, let him into the apartment. The officers identified themselves and stated they were "executing a search warrant." The officers asked Dotson if he had any weapons in his possession. Dotson stated that he had a knife in his pocket, and he put his hand into his pants pocket. One of

---

1. The search warrant was eventually signed by a judge, but not before police encountered Dotson.

the officers grabbed Dotson's hand and removed the knife from his pocket. The knife was approximately five to six inches long. Police also noted that Dotson appeared "homeless," had a full backpack, and was nervous.

During the encounter with Dotson, someone else knocked on the apartment door. Before the officers could answer the door, Dotson yelled out, "They're doing a search warrant in here." Officers escorted Dotson away from the door, pushed him down on a couch, and handcuffed him. Dotson was arrested for obstructing the legal process.

Pursuant to the arrest, police searched Dotson and in his wallet found a small, white piece of paper with a bulge in it. Police opened the paper and found "a crystal like substance that I believed to be Methamphetamine." The substance field-tested positive for methamphetamine. Dotson was charged with felony-level fifth-degree controlled-substance crime (possession).

Dotson filed a pretrial motion to suppress the methamphetamine, arguing that: the officers' entry into the apartment was unlawful; police lacked reasonable suspicion to detain him; and probable cause to arrest him. The district court denied the motion, concluding that the lease gave J.C. authority to enter the apartment without notice and to allow the police inside, and that police had both reasonable suspicion and probable cause to detain and arrest Dotson. Dotson filed a motion to reconsider, arguing that the J.C. did not have actual authority to permit police to enter the apartment based on the lease because Minn. Stat. § 504B.211 does not allow a tenant to waive the right to notice based on provisions in a lease. The district court reconsidered its decision, but again denied Dotson's motion to suppress, concluding that section 504B.211, subd. 4(1), and (3) conferred actual authority on J.C. to enter

the apartment and to give consent to police to enter the apartment.

After the district court denied the motions, Dotson waived his right to a jury trial and agreed to a stipulated-facts trial under Minn. R. Crim. P. 26.01, subd. 4, to preserve the pretrial issue for appeal. The district court concluded that, based on the facts found, the state had proven its case beyond a reasonable doubt and entered a guilty verdict. The district court stayed imposition of Dotson's sentence for four years. This appeal follows.

## ISSUE

In denying Dotson's pretrial motion to suppress evidence, did the district court err by concluding that the property manager had authority to consent to police entering the apartment to conduct a search?

## ANALYSIS

### I. The applicable standard of review is de novo.

When reviewing a district court's pretrial order on a motion to suppress evidence where factual findings are undisputed, this court will determine "as a matter of law, whether the evidence need be suppressed." *State v. Sterling*, 782 N.W.2d 579, 581 (Minn.App. 2010) (quoting *State v. Ortega*, 770 N.W.2d 145, 149 (Minn. 2009)) (undertaking de novo review of pretrial order pursuant to Minn. R. Crim. P. 26.01, subd. 4); *see also State v. Diede*, 795 N.W.2d 836, 843 (Minn. 2011) (stating de novo review is appropriate where parties stipulate to record).

### II. The district court erred in concluding that the property manager had authority to consent to police entering the apartment to conduct a search.

Dotson argues that J.C. lacked actual authority to give consent for police to en-

ter the apartment to conduct a search. Dotson also contends that Minn. Stat. § 504B.211 did not authorize J.C.'s second entry into the apartment for the purpose of allowing police to freeze the scene. The state argues that the lease agreement and, alternatively, Minn. Stat. § 504B.211 gave J.C. authority to enter the apartment. The state also contends that exigent circumstances justified the warrantless entry into the apartment and the inevitable-discovery doctrine applies to the methamphetamine found in Dotson's wallet.

## A. Consent under the lease agreement

The United States and Minnesota Constitutions protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. 1, § 10. Warrantless searches and seizures are per se unreasonable subject to a few well-defined exceptions. *State v. Thompson*, 886 N.W.2d 224, 228 (Minn. 2016) (citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)). "The state bears the burden of establishing the applicability of an exception." *State v. Licari*, 659 N.W.2d 243, 250 (Minn. 2003).

A warrantless search may be conducted if valid consent to search is obtained from a person with actual authority to give such consent. *Id.* Actual authority exists if a third party has rights of mutual use of the property, which generally means "having joint access or control for most purposes." *Id.* (emphasis omitted) (quoting *United States v. Matlock*, 415 U.S. 164, 171 n.7, 94 S.Ct. 988, 993 n.7, 39 L.Ed.2d 242 (1974)). Apparent authority exists if a person reasonably believes that a "third party has authority over the premises and could give consent to enter." *Id.* at 253 (quotation omitted). Whether actual or apparent authority to consent

exists is a legal question subject to de novo review. *See State v. Thompson*, 578 N.W.2d 734, 740–41 (Minn. 1998) (giving no deference to district court when considering if apparent authority to consent to search existed).

Generally, landlords do not have actual authority to consent to a warrantless search of an area occupied by a tenant. *Licari*, 659 N.W.2d at 251. Landlords may only give consent to search when "the tenant has abandoned the property." *State v. Richards*, 552 N.W.2d 197, 204 n.2 (Minn. 1996). "This is because a landlord, though she might reserve rights of *access*, typically does not have rights of use." *Licari*, 659 N.W.2d at 251 (emphasis added). "Thus, a landlord lacks actual authority even when she has" expressly or implicitly "reserved the right to enter for some special and limited purpose." *Id.*

The district court concluded that the lease agreement gave J.C. actual authority to provide consent for police to enter the apartment. After reconsideration, the district court concluded that Minn. Stat. § 504B.211, subd. 4(1), (3), applied, giving J.C. actual authority to enter the apartment without notice to conduct necessary maintenance and to address unlawful activity occurring within the apartment.

The seminal case is *Licari*, where police, pursuant to a lease agreement, obtained consent from a property manager to enter a storage unit to look for evidence of a missing person. 659 N.W.2d at 247. The lease allowed the property manager to enter the unit "at all reasonable times for the purpose of inspection, cleaning, repairing, altering or improving the premises." *Id.* at 248. The manager opened the storage unit upon police request. *Id.* at 247. Without a warrant, two officers entered the storage unit and confirmed that there was a body inside. *Id.* After obtaining a search warrant, officers determined that the dead

woman in the storage unit was the defendant's missing wife. *Id.* Officers also discovered other evidence linking the defendant to the crime. *Id.* The defendant filed a motion to suppress the evidence, which the district court denied. *Id.* at 248–49. On appeal, the supreme court held that a lease provision giving a property manager rights of access did not provide the manager with actual or apparent authority to consent to a search of the premises.[2] *Id.* at 252, 254.

■■■ The lease provision at issue here is almost identical to the provision relied on in *Licari*.[3] Similar to the provision cited in *Licari*, this provision merely gives the landlord or property manager a right to enter, but not a right of mutual use. *See State v. Hodges*, 287 N.W.2d 413, 415 (Minn. 1979) (concluding that reserving the right to enter the premises in a lease does not confer authority to provide consent for warrantless search but also concluding suppression was unnecessary on other grounds). Even if police objectively believed J.C. could enter the unit whenever she wanted to, this does not rise to the standard of mutual use.[4] Thus, the district court erred when it determined that J.C. had actual authority to enter the apartment based on the lease.

## B. Consent under Minn. Stat. § 504B.211

The state argues that Minn. Stat. § 504B.211, subd. 4(1) and (3), allows a landlord to enter a premises without notice and provide consent for police to enter if there is an immediate need to do so. This is an issue of statutory interpretation, which this court reviews de novo. *Rushton v. State*, 889 N.W.2d 561, 563 (Minn. 2017). The goal of statutory interpretation is to determine the intent of the legislature. Minn. Stat. § 645.16 (2016). We construe words and phrases in a statute according to their plain and ordinary meaning. *Id.*, *Rushton*, 889 N.W.2d at 563–64.

Generally, a landlord may *enter* a rented unit for "a reasonable business purpose" after making "a good faith effort to give the residential tenant reasonable notice." Minn. Stat. § 504B.211, subd. 2 (2016).[5] "A residential tenant may not waive and the landlord may not require the residential tenant to waive the residential tenant's right to prior notice of *entry* ... as a condition of entering into or maintaining the lease." *Id.* (emphasis added). A landlord may dispose of the notice requirement only if immediate *entry* is necessary to: (1)

---

2. *Licari* was remanded to the district court for consideration on whether a relocation clause in the lease conferred to the landlord a right of use upon which actual authority to consent to a search could be based. 659 N.W.2d at 256.

3. The provision in this case reads, "Management or its authorized agents may enter the Apartment at any reasonable time to inspect, improve, maintain or repair the Apartment, or do other necessary work, or to show the Apartment to potential new residents or buyers."

4. The state argues that *Licari* is inapposite because that case addressed an illegal search of a premises, not a consent-to-enter or "freezing" scenario as this case presents. The

state's argument is disingenuous. The police entered the apartment specifically to look for drug paraphernalia. The police did not attempt to get a search warrant until after they entered the apartment and observed the paraphernalia. J.C.'s consent to allow police into the apartment was for the express purpose of allowing police to observe the evidence. *See Black's Law Dictionary* 1468 (9th ed. 2009) (defining "search" as "[a]n examination of a person's ... property ... conducted by a law-enforcement officer *for the purpose of finding evidence of a crime.*" (emphasis added)).

5. The 2014 version of the statute was in effect on the date of the incident, however, the current version is identical to the 2014 version.

"prevent injury to persons or property because of" maintenance, security, or police issues; (2) "determine a residential tenant's safety"; or (3) "comply with local ordinances regarding unlawful activity" within the premises. *Id.*, subd. 4(1)–(3) (2016).

The district court, after reconsidering Dotson's motion to suppress evidence, concluded that J.C.'s initial entry was allowed under section 504B.211, subd. 4(1), and her second entry was allowed under subdivision 4(3). The district court also concluded that subdivision 4(3) gave J.C. "actual authority to consent to law enforcement's entry onto the premises and freezing of the scene."

■■■■ Section 504B.211 must be considered in light of the supreme court's holding in *Licari*, which states that actual authority to consent to a search only exists when a landlord or property manager has common authority over the premises. 659 N.W.2d at 250. The "common authority" required by *Licari* is identified by the relationship of the parties to the premises, not on statutorily granted power. *Id.* at 250–51; *see also Matlock*, 415 U.S. at 171 n.7, 94 S.Ct. at 993 n.7. The plain language of section 504B.211 confers only rights of access to the property for limited means. Section 504B.211 does not confer on the landlord or property manager the right of mutual use required under *Licari*. *See* Minn. Stat. § 504B.211, subds. 2–4 (providing for rights of entry by landlord for specified purposes). Thus, the district court erred when it concluded that section 504B.211, subdivision 4(1), (3), gave J.C. actual authority to consent to entry of the apartment by police.

**C. Exigent circumstances**

The state contends that the warrantless entry into the apartment was justified by exigent circumstances. The state argues that because J.B. was in the apartment working on the sink, freezing the scene from inside the apartment was necessary to protect the evidence. The state also argues that exigent circumstances existed because there were three points of entry into the apartment.

■■■■ A temporary seizure may be permissible under the Fourth Amendment "when needed to preserve evidence until police are able to obtain a warrant." *State v. Holland*, 865 N.W.2d 666, 670 n.3 (Minn. 2015). To justify a temporary seizure, the state must show that (1) police had probable cause to believe that the person or premises detained "contained evidence of a crime and contraband," (2) police had a reasonable fear that, without the seizure, the evidence would be destroyed, (3) "police made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy," and (4) the seizure was for a limited time. *Illinois v. McArthur*, 531 U.S. 326, 331–32, 121 S.Ct. 946, 950–51, 148 L.Ed.2d 838 (2001); *see also State v. Diamond*, 890 N.W.2d 143 at 148–49 (2017) (applying the principles of *McArthur*), *review granted* (Minn. Mar. 28, 2017).

Because the district court concluded J.C. could enter the apartment and give consent for police to enter the apartment under the residential lease or Minn. Stat. § 504B.211, it did not address whether exigent circumstances existed that would allow police to freeze the scene from inside the apartment.

■■■■ Here, it is undisputed that police had probable cause to believe that the apartment contained drug paraphernalia. However, it is unreasonable to believe that the evidence was in danger because at the time that police entered the apartment, they knew it was empty. Even though the apartment had three points of entry, multiple officers were present. Moreover, police

did not attempt to "reconcile their law enforcement needs with the demands of personal privacy," because they did not restrict J.B. from entering the apartment, nor did they attempt to secure the premises from outside, and entered knowing the apartment was empty. *Cf. McArthur*, 531 U.S. at 332, 121 S.Ct. at 950–51 (finding reasonable efforts where police did not allow a homeowner to enter house unaccompanied for two hours while they obtained a search warrant). Even though police seized the premises for a limited time, on balance, exigent circumstances did not exist to support the warrantless entry of the apartment.

## D. Inevitable discovery

The state also argues that even if the warrantless entry was unlawful, the methamphetamine seized from Dotson was admissible under the doctrine of inevitable discovery.

 "In a criminal case, the remedy for an illegal search or seizure is generally limited to the suppression of illegally obtained evidence." *State v. Horst*, 880 N.W.2d 24, 36 (Minn. 2016). This rule also applies to the " 'fruits' of an illegal search or seizure." *Id.* "If the state can establish by a preponderance of the evidence that the fruits of a challenged search 'ultimately or inevitably would have been discovered by lawful means,' then the seized evidence is admissible even if the search violated the warrant requirement." *Licari*, 659 N.W.2d at 254 (quoting *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984)). This doctrine "involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment." *Id.* (quotation omitted).

 In order for the state to prevail, it must establish that police would have lawfully encountered Dotson and had reason to perform a search. It is undisputed that police entered the apartment without a warrant and "buzzed" Dotson in. Police were able to encounter Dotson only because they were illegally in the apartment and had access to the means to allow Dotson onto the premises. Without this access, it is mere speculation that police would have encountered Dotson in any other way, or that, if they had encountered him, they would have had reason to seize or search him. Thus, the inevitable-discovery doctrine is inapplicable here.

Because our conclusion that the district court erred in denying Dotson's pretrial motion to suppress the evidence is dispositive, we do not reach whether police had reasonable suspicion to detain Dotson or probable cause to arrest him.

## DECISION

Because the lease agreement and Minn. Stat. § 504B.211, subd. 4(1) and (3), did not give J.C. authority to consent to police entering the premises, exigent circumstances did not justify the entry, and the inevitable-discovery doctrine is inapplicable, the district court erred in denying Dotson's pretrial motion to suppress the methamphetamine found in his wallet. Without this evidence, the district court could not convict Dotson of fifth-degree controlled-substance crime. Therefore, we reverse Dotson's conviction.

**Reversed.**